Marcelina S. CACATIAN, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 97–1730.

United States Court of Appeals for Veterans Claims.

May 11, 1999.

374

Marcelina S. Cacatian, pro se.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Gregory W. Fortsch, Washington, DC, were on the pleadings for the appellee.

Before FARLEY, HOLDAWAY, and GREENE, Judges.

HOLDAWAY, Judge:

The appellant, Marcelina S. Cacatian, the widow of veteran Angel C. Cacatian, appeals the June 1997 decision of the Board of Veterans' Appeals (Board or BVA) which determined that she was not entitled to recognition as the veteran's surviving spouse for VA benefits purposes. The appellant has filed an informal brief, and the Secretary has filed a motion for summary affirmance. The Court has jurisdiction of this matter under 38 U.S.C. § 7252(a). Because this appeal involves a matter of statutory interpretation that is an issue of first impression, summary affirmance is not appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23 (1990). For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The veteran served on active duty in the U.S. Army from May 1942 to May 1950. R. at 94. The veteran's service records list the appellant as his wife. R. at 44–46. In April 1989, the veteran died of a myocardial infarction. R. at 141.

In June 1989, the appellant filed an application for dependency and indemnity compensation. R. at 132–35. A notarized certificate from the civil register of the Municipality of Fabian Pangasinan states that the veteran and the appellant were married in May 1945. R. at 187. In March and April 1991, the VA regional office conducted field examinations, including depositions of the appellant and the veteran's brother. R. at 264–79. The field examiners found that the appellant had been living in a common law relationship with Pablo G. Mabutas since May 1955. The appellant and Mr. Mabutas had never been married because she was still legally married and, therefore, they were not free to enter into a marriage contract.

According to the appellant's March 1991 deposition, she married the veteran in May 1945, and they had lived together as husband and wife until he was reassigned in 1947. R. at 267–68. At that time she went to live with his parents. *Id.* She stated that she received continual monthly support from the veteran until he was discharged in May 1950. *Id.* She testified that she was visited by the veteran's sisters sometime in 1950 and that they informed her that the veteran was living in a marital relationship in Manila. R. at 269. The appellant indicated that she was hurt by his actions and did not attempt to contact him. *Id.* She also indicated that the veteran had never tried to reconcile with her.

In June 1992, Mr. Mabutas died. In February 1993, the appellant submitted a joint affidavit from Andres and Gregoria Cacatian, the veteran's brother and sister. R. at 387. They attested to the fact that the appellant and the veteran were married in May 1945 and had lived together from 1945 to 1947. They also stated that the veteran had left the appellant for unknown reasons and that the appellant had no fault in the separation. *Id.* A field examination in June 1996 verified the above history. R. at 539–44.

The Board found that the veteran and the appellant were married in May 1945, had lived together until 1947, and then were permanently separated. The Board found that she was not eligible for dependency and indemnity compensation because she had lived

with and held herself out as the wife of Mr. Mabutas. The Board also found that 38 C.F.R. § 3.55 (1998) did not apply because her relationship with Mr. Mabutas had not terminated prior to November 1, 1991.

## II. ANALYSIS

Section 101(3) of title 38, U.S.Code, states:

The term "surviving spouse" means ... a person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse) and who has not remarried or (in the case not involving marriage) has not since the death of the veteran ... lived with another person and held himself or herself out openly to the public to be the spouse of such other person.

Section 3.50 of title 38, Code of Federal Regulations, the implementing regulation, states:

(b) *Surviving spouse.* ... "[S]urviving spouse" means a person of the opposite sex whose marriage to the veteran meets the requirements of § 3.1(j) and who was the spouse of the veteran at the time of the veteran's death and:

(1) Who lived with the veteran continuously from the date of marriage to the date of the veteran's death except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse; and

(2) Except as provided in § 3.55, has not remarried or has not since the death of the veteran and after September 19, 1962, lived with another person of the opposite sex and held himself or herself out openly to the public to be the spouse of such other person.

"*Marriage* means a marriage valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued." 38 C.F.R. § 3.1(j) (1998). At the time of the Board's decision, pursuant to 38 C.F.R. § 3.55(a)(3), "the fact that a surviving spouse has lived with another and has held himself or herself out openly to the public as the spouse of such other person shall not bar the furnishing of benefits to him or her after he or she terminates the relationship, if the relationship terminated prior to November 1, 1990." *See also Owings v. Brown,* 8 Vet.App. 17, 19–20 (1995) (explaining the legislative enactments underlying the November 1, 1990, limitation in section 3.55).

In order to understand the relevance of the November 1, 1990, date limitation in section 3.55(a)(3), a brief synopsis of the Congressional enactments affecting surviving-spouse eligibility is necessary. Prior to November 1, 1990, 38 U.S.C. § 103(d)(3) (1989) stated "If a surviving spouse ceases living with another person and holding himself or herself out openly to the public as that person's spouse, the bar to granting that person benefits as the surviving spouse of the veteran shall not apply." However, Congress struck out subsection (d)(3) effective October 31, 1990, thereby prohibiting the reinstatement of eligibility for dependency and indemnity compensation upon the termination of a marital-type relationship. *See* Omnibus Budget Reconciliation Act of 1990 (OBRA), Pub.L. No. 101–508, § 8004, 104 Stat. 1388 (1990) (found at 38 U.S.C. § 103 note). In August 1992, Congress enacted an exception to the above amendment in OBRA:

The amendments made by section 8004 of the [OBRA] shall not apply with respect to any individual who on October 31, 1990, was a surviving spouse or child within the meaning of title 38, [U.S.] Code, unless after that date that individual (1) marries, or (2) in the case of a surviving spouse, begins to live with another person while holding himself or herself out openly to the public as that person's spouse.

Veterans Benefits Programs Improvement Act of 1991 (VBPIA), Pub.L. No. 102–86, § 502, 105 Stat. 414, 424 (1991) (found at 38 U.S.C. § 103 note). Therefore, under the VBPIA exception, if a person terminated a marital-type relationship prior to November 1, 1990, that relationship would not bar eligibility for dependency and indemnity compensation, i.e., surviving-spouse status. For that

reason, the Board found that because the appellant's relationship with Mr. Mabutas had terminated in 1992, she was not entitled to recognition as the surviving spouse of the veteran.

In June 1998, after the Board decision currently on appeal was issued, Congress enacted the following:

**SEC. 8207. ELIGIBILITY OF CERTAIN REMARRIED SURVIVING SPOUSES FOR REINSTATEMENT OF DEPENDENCY AND INDEMNITY COMPENSATION UPON TERMINATION OF THAT REMARRIAGE.**

(a) RESTORATION OF PRIOR ELIGIBILITY-Section 1311 of title 38, United States Code, is amended by adding at the end the following new section:

. . . .

[ (e) ](2) If the surviving spouse of a veteran ceases living with another person and holding himself or herself out openly to the public as that person's spouse, the bar to granting that person dependency and indemnity compensation as the surviving spouse of the veteran shall not apply.

Transportation Equity Act for the 21st Century (the Act), Pub.L. No. 105–178, § 8207, 112 Stat. 107, 495 (June 9, 1998). Basically, Congress has enacted a newer version of the pre-November 1, 1990, statutory provision. However, it applies only to *reinstatement* of dependency and indemnity compensation for certain remarried surviving spouses. Significantly, this provision amended section 1311. It did not purport to affect in any way the more general definition contained in section 101(3). "[W]here the law . . . changes after a claim has been filed . . . but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant [must] apply unless Congress provided otherwise or permitted the Secretary . . . to do otherwise and the Secretary did so." *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991).

In the present case, there is no dispute regarding the following factual determinations of the Board: (1) the appellant was the legal spouse of the veteran at the time of his death, (2) she was deemed to have lived with the veteran continuously since their marriage because the veteran procured the separation and she was not at fault, and (3) she lived with Mr. Mabutas and held herself out to the public as his spouse from 1955 until his death in June 1992. The appellant argues that because Mr. Mabutas is dead, the relationship they had is terminated, and she is now eligible for dependency and indemnity compensation. The Secretary, on the other hand, argues that section 1311(e) applies only to reinstatement of benefits to which a surviving spouse had previously been eligible and since the present matter involves initial eligibility for benefits, the provisions relating to restoration of prior eligibility do not apply.

Therefore, the issue before the Court is whether section 1311(e) of title 38, U.S.Code, created a new basis for initial entitlement to surviving-spouse status. The Court reviews de novo questions of statutory interpretation. *See Owings,* 8 Vet.App. at 21. "The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" *Gardner v. Brown,* 5 F.3d 1456, 1456 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). "Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." *Gardner v. Derwinski,* 1 Vet.App. 584, 586 (1991). By the plain language of the statutory provision at issue, section 1311(e) only creates entitlement to *restoration* of prior surviving spouse eligibility. Therefore, where the "surviving spouse" of a veteran remarries, or commences living in a marital-type relationship, *after the death* of the veteran, then termination of that relationship would restore *prior* surviving-spouse eligibility with regard to dependency and indemnity compensation. A person who is the legal spouse of a veteran, but who is participating in a marital-type relationship at the time of the veteran's death, is not eligible for benefits at the time of the veteran's death because the spouse does not meet the statutory definition of "surviving spouse." *See* 38 U.S.C. § 101(3).

█ In this case, at the time of the veteran's death in 1989, the appellant was living with and holding herself out to be the spouse of Mr. Mabutas. She continued to do so until Mr. Mabutas' death in 1992. Therefore, at the time of the veteran's death, the appellant was not eligible to claim surviving-spouse status. *See* 38 U.S.C. § 101(3). It follows therefore, that section 1311(e), which permits a restoration of prior eligibility for dependency and indemnity compensation, is not applicable in this matter. Absent the application of section 1311(e), and based on the undisputed facts in this case, there is a plausible basis in the record for the Board's decision that the appellant was not entitled to recognition as the veteran's surviving spouse. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). For that reason, the Court will affirm the decision of the Board. *See* 38 U.S.C. § 7261(a)(4).

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand. The Court is also satisfied that the BVA decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert,* 1 Vet.App. at 56–57. The June 1997 decision of the Board is AFFIRMED.