STEINBERG, Judge, filed the opinion of the Court. FARLEY, Judge, filed a dissenting opinion.
STEINBERG, Judge:
The appellant, Vietnam veteran Raymond Gallegos, appeals through counsel a December 9, 1998, Board of Veterans’ Appeals (BVA or Board) decision that denied entitlement to an earlier effective date for the award of Department of Veterans Affairs (VA) service connection for post-traumatic stress disorder (PTSD). Record (R.) at 9. The appellant has filed a brief, and the Secretary has filed a brief. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will reverse the BVA decision and remand the matter to the Board for proceedings consistent with this opinion.
I. Background
The veteran served on active duty from September 1966 to May 1970. R. at 12. *52 In March 1992, he filed a claim for VA service connection for diabetes and chlor-acne. R. at 95-98. In a statement received by a VA regional office (RO) on August 31, 1993, he amended the claim to include a claim for service connection for PTSD. R. at 190a. A February 1993 social history, prepared by a private social worker, contained a diagnosis of PTSD. R. at 184. A November 1993 VA examination failed to make a diagnosis of PTSD and recommended hospital observation and evaluation. R. at 217. An April 1994 discharge summary, which included a mental status examination and psychological testing, included a diagnosis of dependent personality but not of PTSD. R. at 219-20. In September 1994, the VARO determined that the evidence of record faked to show a diagnosis of PTSD and denied the appellant’s claim. R. at 222-24. On October 11, 1994, the appellant’s representative at the time, the Disabled American Veterans (DAV), submitted a letter, entitled “Memo to Rating Board” [hereinafter “DAV letter”], which stated in full:
After review of this veteran’s claims file and the current rating decision, it is our opinion that denial of the veteran’s claim for [PTSD] was a little bit premature. Further development, i.e., review of the Social Worker’s statement in regards to referral to the Environment Support Group for verification of specific incidents for stressors would prove beneficial to fair evaluation of this veteran’s claim.
We suggest careful gleaning of the information from the Social Worker’s statement would give sufficient detail without delay to request thorough investigation. Please do not forward this veteran the standard stressor development letter. Your appropriate attention is appreciated.
R. at 228.
The claim lay dormant until February 20, 1997, when the veteran, through attorney James W. Stanley, Jr., filed an application to reopen the disallowed service-connection claim for PTSD. R. at 272. In October 1997, the RO granted service connection for PTSD and assigned a February 20, 1997, effective date. R. at 332-35. Also in October 1997, the veteran filed a Notice of Disagreement (NOD) as to the assigned effective date. R. at 339. At a March 1998 hearing, Mr. Stanley indicated that an issue was whether the DAV letter was an NOD as to the September 1994 RO decision. R. at 367.
In the December 1998 BVA decision here on appeal, the Board determined that the appellant was not entitled to an effective date earlier than February 20, 1997. R. at 1-10. The BVA concluded that, because the September 1994 rating decision had become final when the appellant failed to file a valid NOD, an effective date of August 31, 1993, the date of receipt of the appellant’s original claim for PTSD service connection, was not warranted. R. at 4. The Board decided that the DAV letter was not a valid NOD as to the September 1994 RO decision because, although it could reasonably be construed as disagreeing with the RO decision, it “could not be reasonably construed to indicate the appellant’s desire for appellate review”. R. at 8. The BVA stated that a note attached to the letter reflected that the RO had understood it to be a request for further development. Ibid. In their briefs, the appellant and the Secretary both indicate that they are unable to locate this note. Appellant’s Brief (Br.) at 8; Secretary’s Br. at 7. The note is not part of the record on appeal (ROA) before the Court.
II. Analysis

A. Effective-Date Law

The determination of the effective date for an original claim is governed by 38 U.S.C. § 5110(a), which provides:
Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensa *53 tion, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.
See also 38 C.F.R. § 3.400(b)(2) (1999) (providing that effective date shall be date of receipt of claim or date entitlement arose, whichever is later, unless claim received within one year after separation from service); Tucker v. West, 11 Vet.App. 369, 372 (1998) (concerning effective date of original claim for service connection); Dinsay v. Brown, 9 Vet.App. 79, 87 (1996). In his brief, the appellant advises the Court that at issue here is “whether or not [the DAY letter] was a valid NOD, thereby establishing an earlier effective date” for the PTSD service-connection award. Br. at 6. If the appellant is correct that the DAV letter was a valid NOD, his 1993 claim remains open and pending, and thereby pertinent to the decision on the proper effective date for his PTSD rating. See 38 C.F.R. § 3.160(c) (1999) (a “[pending claim” is an “application, formal or informal, which has not been finally adjudicated”). Although this law forms the backdrop for this case and shows why the NOD question is critical to the outcome of the merits decision as to effective date, the Court will address only the NOD question in this opinion.

B. NOD Statute and Regulation

Section 7105 of title 38 of the U.S.Code provides as follows in pertinent part:
(a) Appellate review will be initiated by a notice of disagreement and completed by a substantive appeal after a statement of the case is furnished as prescribed in this section. Each appellant will be accorded hearing and representation rights pursuant to the provisions of this chapter and regulations of the Secretary.
(b)(1) Except in the ease of simultaneously contested claims, notice of disagreement shall be ñled within one year from, the date of mailing of notice of the result of initial review or determination. Such notice, and appeals, must be in writing and be ñled with the activity which entered the determination with which disagreement is expressed (hereafter referred to as the “agency of original jurisdiction” [ (AOJ) ]). A notice of disagreement postmarked before the expiration of the one-year period will be accepted as timely filed.
(2) Notices of disagreement, and appeals, must be in writing and may be ñled by the claimant, the claimant’s legal guardian, or such accredited representative attorney, or authorized agent as may be selected by the claimant or legal guardian. Not more than one recognized organization, attorney, or agent will be recognized at any one time in the prosecution of a claim.
(c) If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title.
(d)(1) Where the claimant, or the claimant’s representative, within the time specified in this chapter, files a notice of disagreement with the decision of the agency of original jurisdiction, such agency will take such development or review action as it deems proper under the provisions of regulations not inconsistent with this title. If such action does not resolve the disagreement either by granting the benefít sought or through withdrawal of the notice of disagreement, such agency shall prepare a statement of the case....
(Emphasis added.)
The Secretary has promulgated the following regulation implementing 38 U.S.C. § 7105 that purports to define what constitutes an NOD:
A written communication from a claimant or his or her representative express *54 ing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result will constitute a Notice of Disagreement. While special wording is not required, the Notice of Disagreement must be in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review. If the agency of original jurisdiction gave notice that adjudicative determinations were made on several issues at the same time, the specific determinations with which the claimant disagrees must be identified....
38 C.F.R. § 20.201 (1999) (emphasis added). “ ‘Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a).’” Buckley v. West, 12 Vet.App. 76, 82 (1998) (quoting Beyrle v. Brown, 9 Vet.App. 24, 27-28 (1996)). Accordingly, determining the effect of the regulatory language emphasized above is the crux of this case.
C. Relationship Between Statute and Regulation
In its December 1998 decision, the BVA determined that the DAV letter was not a valid NOD because, although it may be read as expressing disagreement with the September 1994 RO decision, it “could not be reasonably construed to indicate the appellant’s desire for appellate review” by the Board, as the Board construed the regulation (§ 20.201) to require. The specific requirement that an NOD “must be in terms which can be reasonably construed as ... a desire for appellate review” by the BVA is not stated in section 7105 or anywhere else in statute. Thus, the Court must consider the validity of this regulatory provision. See Gardner v. Derwinski, 1 Vet.App. 584, 586 (1991), aff'd sub nom. Gardner v. Brown, 5 F.3d 1456 (Fed.Cir.1993), aff'd, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994).
“‘The starting point in interpreting a statute is its language.’” Lee (Raymond) v. West, 13 Vet.App. 388, 394 (2000) (quoting Good Samaritan Hospital v. Shalala, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993)).
The “plain meaning [of a statute] must be given effect unless a ‘literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.’” Gardner [, supra ]; Fagan[ v. West], 13 Vet.App. [48,] 52 [(1999)]; Curtis[ v. West], 11 Vet.App. [129,] 133 [ (1998) ]. “If the intent of Congress is clear, that is the end of the matter”. Skinner v. Brown, 27 F.3d 1571, 1572 (Fed.Cir.1994) (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 ... (1984)), aff'ing 4 Vet.App. 141 (1993) (mem.).
Lee (Raymond), supra. Here, the statute provides clearly on its face that appellate review is initiated by a “notice of disagreement”. The statute specifies the five elements for such an NOD: That it must (1) express disagreement with a specific determination of the agency of original jurisdiction (generally a decision by an RO [hereinafter referred to as “RO decision”]) (§ 7105(d)(2)); (2) be filed in writing (§ 7105(b)(1), (b)(2)); (3) be filed with the RO (§ 7105(b)(1)); (4) be filed within one year after the date of mailing of notice of the RO decision (§ 7105(b)(1)); and (5) be filed by the claimant or the claimant’s authorized representative (§ 7105(b)(2)). The only content requirement is an expression of “disagreement” with the decision of the RO.
Here, a plain reading of 38 U.S.C. § 7105 shows a statutory scheme whereby a document that satisfies the five specified elements is an NOD and thereby initiates appellate review. The NOD triggers a series of sequential steps that may lead to an appeal to the Board. The first step of the ensuing process initiated by an NOD under section 7105(d)(1) is the “development or review action” taken by the RO to try to resolve the disagreement. Specifi *55 cally, VA regulations require that, after an NOD is timely filed, the RO “must reexamine the claim and determine if additional review or development is warranted”. 38 C.F.R. § 19.26 (1999). Thereafter, and only “[i]f such action does not resolve the disagreement either by granting the benefit sought or through withdrawal of the” NOD, the RO issues an SOC (or a Supplemental SOC (SSOQ). 38 U.S.C. § 7105(d)(1); see 38 C.F.R. § 19.26.
The clarity and completeness of the statute has been determined by our opinion in Tomlin v. Brown, 5 Vet.App. 355 (1993). In applying § 20.201 in Tomlin, this Court held that “we construe the regulation to impose no technical formal requirements for an NOD beyond the requirements set by the statute, for to impose any such requirement would exceed the Secretary’s [regulatory] authority ... [under] 38 U.S.C.[] § 501”. Tomlin, 5 Vet.App. at 357; see 38 U.S.C. § 501(a) (“[t]he Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws”); Lee (Raymond), 13 Vet.App. at 397 (“Secretary’s authority under section 501(a) is restricted to actions that are ‘consistent with [the] laws [administered by VA]’ ”). The Court so held in the context of construing the statutory requirement that an NOD “must be in writing” as being satisfied by the printed transcript of an RO hearing. Ibid. In sustaining that transcript as an NOD, the Court in Tomlin made no reference to any “desire for appellate review”, but rather stated only:
[W]e find that the oral statement of appellant’s accredited representative at the May 1988 hearing, that appellant continued to claim a 20% rating, meets the statutory definition of an NOD. It was timely, it was addressed to the AO J, and it was presented by appellant’s accredited representative. When it was transcribed on July 25, 1988, it met the remaining statutory requirement that it be “in writing.” We must conclude that, having met all statutory requirements, the statement in question was the NOD as to the claim now on appeal. The date of certification of the transcript by VA is the date of fifing.
Id. at 357-58 (emphasis added).
In other words, Tomlin required only that the NOD be timely filed with the RO and express disagreement by seeking a higher rating (thereby implying dissatisfaction with the lower rating assigned by the RO), be filed by or for the claimant, and be “in writing”. It did not require— or even refer to — an expression of a desire for appellate review, or a reasonable implication of such a desire, as the regulation appears to call for. Indeed, we can find no precedential action of this Court that has held that a document that satisfied the five statutory elements was not a valid NOD solely because it did not express “a desire for appellate review”. Cf. Fenderson v. West, 12 Vet.App. 119, 128 (1999) (NOD sustained that included statement “[p]lease send me a statement of the case”, i.e., reference to appeal process); Buckley, 12 Vet.App. at 79 (NOD sustained that stated “please accept this as a Notice of Disagreement”, i.e., called itself NOD); Beyrle, 9 Vet.App. at 27 (NOD sustained that requested “new SSOC be issued and that there be an ‘expeditious transfer of the file to the [Board]’ ”, i.e., included reference to appeal process). The Court in Tomlin thus, by implication, read out of the regulation any added requirement of an expression of a desire for appellate review; indeed, as we noted above, the Court made no reference to that part of the regulation although it quoted the other decisive portions of it. Tomlin, 5 Vet.App. at 357.
The difficulty with § 20.201 is that it may be read as implying that a VA claimant must intend to appeal to the Board at the time that he or she files an NOD. Indeed, this is how our dissenting colleague seems to interpret the regulation. Infra at 60-61. Any such construction *56 makes no sense under the statutory scheme, however. All that an NOD-filing claimant need desire is review and development by the RO followed by its issuance of an SOC (or SSOC) if the claimant’s disagreement is not resolved by the RO. This is the process required by section 7105(d)(1). Ultimately, if the claimant is still dissatisfied after receiving the SOC (or SSOC), he or she then may pursue an appeal to the BVA by filing a Substantive Appeal, and only then does the case go forward to the Board for its review. In other words, after an NOD is filed, it is quite possible that it may not become necessary to transmit the case to the BVA.
How then can it be reasonable for the Secretary to require that every denied VA claimant must, at the time he or she files an NOD, express a desire for BVA review? The answer is quite simply that it cannot be reasonable and that, accordingly, such a regulatory requirement would not be “consistent with” the statutory provisions, as it must be in order to be a valid regulatory requirement promulgated under 38 U.S.C. § 501(a). Indeed, the Secretary could promulgate a regulation only if the statute left a “gap” to be filled in by the Secretary, see Chevron U.S.A. Inc., 467 U.S. at 843, 104 S.Ct. 2778; see also Lee (Raymond), 13 Vet.App. at 395-96. As we recently held in Lee (Raymond):
The deficiency in the Secretary’s contention that the statute leaves a “gap” for him to fill in becomes all the more apparent when we apply the injunction that “when interpreting statutes, the court is required to look at the context and provisions of the law as a whole.” Degmetich v. Brown, 104 F.3d 1328, 1332 (Fed.Cir.1997).
Lee (Raymond), 13 Vet.App. at 395. Regarding section 7105, as we have already indicated, the Tomlin opinion stands for the proposition that the statute creates a full and complete process for initiating and perfecting a request for “appellate review” following the filing of an NOD that initiates the sequential steps in that review process that may lead to review by the BVA on appeal. Hence, we conclude that there is no “gap” in this statutory scheme and that the Secretary, rather than having filled in the gap conjured up by the dissenting opinion, has by regulation raised a barrier to appellate review where none exists in section 7105.
Moreover, in considering the validity of the Secretary’s NOD regulation, we must bear in mind that we are expounding upon an adjudication system deliberately designed by Congress to be pro-claimant. See Hensley v. West, 212 F.3d 1255, 1262 (Fed.Cir.2000); Hayre v. West, 188 F.3d 1327, 1333 (Fed.Cir.1999); Hodge v. West, 155 F.3d 1356, 1362-64 (Fed.Cir.1998). Consequently, even were we to find some ambiguity in the statute, which we do not, we would be compelled to resolve “ ‘interpretative doubt ... in the veteran’s favor’”. Boyer v. West, 210 F.3d 1351, 1355 (Fed.Cir.2000) (quoting McKnight v. West, 131 F.3d 1483, 1485 (Fed.Cir.1997) (quoting Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994))); see Allen v. Brown, 7 Vet.App. 439, 448 (en banc) (applying Gardner to resolve interpretative doubt in veteran’s favor).
Finally, we must not lose sight of the forest as we examine the trees in it. An NOD operates not only as the linchpin to a VA claimant’s obtaining full administrative review from the Secretary but also as the indispensable ticket to judicial review in this Court. Congress specifically provided in Veterans’ Judicial Review Act (VJRA) section 402 that judicial review would be available when an NOD “filed under section [7105]” is submitted on or after the enactment of the VJRA. See VJRA, Pub.L. No. 100-687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); Barrera v. Gober, 122 F.3d 1030, 1031 (Fed.Cir.1997); Grantham v. Brown, 114 F.3d 1156, 1157 (Fed.Cir.1997), rev’g 8 Vet.App. 228 (1995); Hamilton v. Brown, 4 Vet.App. 528, 531 (1993) (en banc), aff'd, 39 F.3d 1574 (Fed.Cir.1994). Without an effective NOD, therefore, a VA claimant *57 cannot obtain access to this Court. To permit the Secretary — by adding via regulation to the statutory requirements for' an NOD — to insulate from Court review adjudicative decisions made on his behalf would fly in the face of the remedial nature of the VJRA in providing judicial review to veterans and other VA claimants. See Smith (William) v. Brown, 35 F.3d 1516, 1525 (Fed.Cir.1994) (“courts are to construe remedial statutes liberally to effectuate their purposes ... [and vjeterans benefits statutes clearly fall in this category”). It would be just as unconscionable to allow the Secretary to erect such “a shield against judicial review” as it would have been for us to have allowed the BVA Chairman to “defeat the right to judicial review at a critical juncture in a case by ordering reconsideration of a prior [BVA] decision which is beyond the reach of that right.” Smith (George) v. Brown, 8 Vet.App. 546, 553 (1996) (en banc). As Judge Plager wrote in Barrera, “when construing ambiguities in the [VJRA], we should err, if we err at all, on the side of protecting a veteran’s right to the judicial review Congress has mandated.” Barrera, 122 F.3d at 1040 (Plager, J., concurring). In light of the foregoing analysis, there is no basis for affording the Secretary even the slightest latitude to make it more difficult for a claimant to file an NOD when VA already has on file a document that satisfies the statutory criteria for an NOD.

D. Application of Law to Facts of Case

In the instant case, the Board interpreted the “appellate review” language in § 20.201 as follows:
The purpose of the Notice of Disagreement is to initiate appellate review by informing VA, within one year from the date of VA’s mailing of the notice of the result of a determination by an RO[,] of the claimant’s intent to appeal to the Board. Tomlin [ ], 5 Vet.App. [at] 357....
The Board finds that the October 1994 letter can be construed by a broad and favorable interpretation to indicate that the appellant was in disagreement with the September 1994 rating decision. The representative indicated the decision was “premature” and asked for further development of the [PTSD] stres-sors, which can be construed to indicate his dissatisfaction with the denial of service connection.
However, the letter cannot be reasonably construed to indicate the appellant’s desire for appellate review. The letter submitted by an accredited representative did not give the VA notice of intent to appeal to the Board. It was in- every way a request that the RO take further action in developing stres-sor evidence. The note attached to the letter reflects the RO’s understanding that it was a request for further development and that there was no actual notice of intent to appeal.
R. at 7-8 (emphasis added). As our foregoing discussion demonstrates, the Board was mistaken in its interpretation of § 20.201. Although some prior decisions of this Court may have, in dictum, given credence to similar interpretations, as has been established above the Court has never directly addressed this issue. We do so now, and hold that § 20.201, to the extent that it might be read as requiring that an NOD express a desire for BVA review, runs afoul of the Tomlin injunction against VA’s adding a “technical formal requirement] for an NOD beyond the requirements set by the statute” and thereby “exeeed[s] the Secretary’s authority” to prescribe regulations under 38 U.S.C. § 501. Tomlin, 5 Vet.App. at 357; see also Bernier v. Brown, 7 Vet.App. 434, 438 (1995) (invalidating VA regulation to the extent that Secretary’s interpretation of it is followed).
Therefore, insofar as § 20.201 may be interpreted as adding a requirement of an expression of a desire for BVA review, we hereby invalidate it. See Lee (Raymond), 13 Vet.App. at 397; Bernier and Gardner, both supra. To the extent that § 20.201 *58 may be read as requiring only an expression of a desire for further development and review action by the RO, it adds nothing to the statutory language requiring an expression of disagreement; that is, such a desire is inherent in the submission of an NOD under section 7105 given the sequential steps it establishes once an NOD is filed to “initiate[]” “[a]ppellate review”. 38 U.S.C. § 7105(a); cf. Strott v. Derwinski, 964 F.2d 1124, 1127 (Fed.Cir.1992) (holding that hearing at RO held after NOD and Substantive Appeal are filed “is part of the appellate process”). In either event, the regulatory reference to “a desire for appellate review” cannot support finding invalid as an NOD a document that otherwise complies with the five section 7105 elements of an NOD. Indeed, to hold otherwise would be contrary to the legislative history accompanying the adoption in 1962 of the NOD legislative language; the Senate committee then stated that the purpose of the bill regarding NODs was to “place the veteran ... in a better position to develop new evidence available and to fully prepare and present his appeal”. S.Rep. No. 1843 (1962), reprinted in U.S.C.C.A.N. 2570, 2577.
It is this very same further development and review by the RO that the DAV letter was requesting in this case. Because such further preparation is contemplated by section 7105(d)(1) after the submission of an NOD (i.e., further RO development and review), holding that the document at issue here is not an NOD would frustrate that legislative intent because, in this case, the veteran specifically requested further preparation.

E. DAV Letter Constituted NOD

It is undisputed that the DAV letter fulfilled the five section 7105 elements of an NOD: It (1) expressed disagreement with an RO decision, (2) was in writing, (3) was filed with the RO, (4) was filed within one year after the date of mailing of notice of the result of that RO decision, and (5) was filed by the claimant’s authorized representative. See 38 U.S.C. § 7105; R. at 7-8; Appellant’s Br. at 7; Secretary’s Br. at 3, 7. The Board expressly found as fact that the DAV letter can “be construed ... to indicate that the appellant was in disagreement with the September 1994 rating decision”. R. at 8. Because, as we held above, 38 C.F.R. § 20.201 cannot be read as imposing any formal requirements beyond those set by 38 U.S.C. § 7105, see Tomlin, supra, and, because the expression of a desire for appellate review is either such an impermissible added requirement or an inherent element of an NOD, the requirements of the statute are all that the veteran was required to satisfy, and it is undisputed that he did so via the DAV letter. Accordingly, we hold that the veteran filed a valid NOD as to the September 1994 RO decision. Therefore, the Court will reverse the December 1998 BVA decision to the contrary and remand the claim to the Board for further adjudication as to the effective date of the award of service connection for the veteran’s PTSD. See 38 U.S.C. § 7261(a)(1).
III. Conclusion
Upon consideration of the ROA and the pleadings of the parties, the Court reverses the December 9, 1998, BVA decision and remands the matter to the BVA for proceedings consistent with this opinion. The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. See Stegall v. West, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. See Marsh v. West, 11 Vet.App. 468, 472 (1998).
REVERSED AND REMANDED.