# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-57

CATHERINE A. OZER, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    February 6, 2001  )

*Steven A. Alerding*, of Washington, D.C., was on certain of the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Mary Ann Flynn*, Acting Deputy Assistant General Counsel; *Brian D. Rippel*; and *Gregory W. Fortsch*, all of Washington, D.C., were on the pleadings for the appellee.

*Robert V. Chisholm*, of Providence, Rhode Island, was on the brief for the National Organization of Veterans' Advocates, as amicus curiae.

Before HOLDAWAY, IVERS, and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, Catherine A. Ozer, wife of Vietnam veteran Philip Ozer, appeals a September 16, 1997, decision of the Board of Veterans' Appeals (BVA or Board) that denied entitlement to dependents' educational assistance (DEA) under chapter 35 of title 38, U.S. Code. Record (R.) at 3. The appellant filed pro se an informal brief, and the Secretary filed a motion for single-judge affirmance. On May 4, 2000, the Court ordered the parties to file supplemental memoranda, *Ozer v. West*, 13 Vet.App. 458 (2000) (per curiam order), and counsel subsequently entered the case on behalf of the appellant. The Court has received responses to its May 2000 order from the parties and from the National Organization of Veterans' Advocates as amicus curiae in support of the appellant's claim. This appeal is timely, and the Court has jurisdiction pursuant to

38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will reverse the BVA decision and remand the matter.

## I. Background

The appellant is the wife of Philip Ozer [hereinafter the veteran], who served on active duty in the U.S. Army from November 1966 to April 1979, including service in Vietnam. R. at 9. In August 1979, a Department of Veterans Affairs (VA) regional office (RO) awarded the veteran a combined VA service-connected rating of 90%, for numerous service-connected conditions, including depression associated with organic brain syndrome due to trauma and a grand-mal-seizure disorder, and a rating of total disability based on individual unemployability effective on April 6, 1979, the day after he was discharged from military service. R. at 19, 22. In June 1980, the VARO determined that the veteran "became permanently disabled in service" and awarded him a total (100%) disability rating. R. at 27-28. That RO decision also established "[e]ntitlement to benefits under [c]hapter 35, 38 U.S.C., . . . from 4-6-79." R. at 28. Apparently, for reasons that are not clear, the RO revisited the identical issue in July 1983, when it issued a confirmed rating decision that found the veteran to be "severely disabled and unemployable", and noted: "Basic elig. to Chpt. 35 is established from 5-22-83." R. at 34.

The record on appeal (ROA) contains a copy of an August 1983 letter from the RO to the veteran that notified him of his July 1983 award but that was silent as to the specific issue of chapter 35 eligibility; the letter did inform the veteran that the amount of his monthly benefits was $1,437.00 and that that "amount include[d his] wife, mother[,] and two children". R. at 36. The appellant and amicus curiae both argue that notice of the 1983 RO decision was not properly effectuated as to eligibility for DEA. Appellant's September 7, 2000, Memorandum (Mem.) at 7-11; Brief of Amicus Curiae at 7-10 [hereinafter Amicus Br.].

In July 1994, the appellant submitted to the RO an enrollment certification regarding her pursuit of a degree in nursing at San Antonio College in Texas. R. at 45-47. On August 8, 1994, according to a VA report of contact, the veteran was "extremely upset because his current wife had found out that his ex-wife was on VA records and she[, i.e., the appellant,] couldn't apply for" DEA. R. at 49. The veteran was advised to "come to VA office and get matter resolved". *Ibid.* In a

2

statement dated three days later, the veteran notified VA that his "present wife wishe[d] to attend school under [his] VA benefits." R. at 41. He indicated that since 1979 he had twice been divorced and remarried, and explained that his organic brain syndrome affected his memory so that "[i]f [he] did forget to let VA know of [his] divorce and remarriages it [was] a result of [that] disability." *Ibid.* Attached to the veteran's statement was a Declaration of Status of Dependents form that indicated that he had divorced "Candace Ozar" in May 1979, had been married to "Blanch Farris" from January 1983 to January 8, 1988, and had married the appellant on January 28, 1988. R. at 42.

The RO in September 1994 denied the appellant's claim for DEA, and stated: "To be eligible for this benefit, a spouse must use the available entitlement within their [sic] delimiting period, which is 10 years from the effective date of the permanent and total rating, or the notification date of the rating of the disabled veteran." R. at 51. The RO reasoned that the effective date of the veteran's total rating had been in May 1983 and that DEA eligibility based on that rating had expired in May 1993; thus, the RO concluded that the appellant was not eligible for DEA for a program of education begun in August 1994. *Ibid.* The appellant timely appealed to the Board. R. at 54, 69. In her October 1994 Notice of Disagreement, as well as in sworn testimony given before the RO in June 1995, she explained that prior to 1994 she had not been able to pursue a program of education because she had been caring for both the veteran and her disabled child, but that her parents had been available as of 1994 to help provide that care. R. at 54, 76-77. She also submitted a May 1995 letter from a private therapist that described the appellant as "the care-taker [sic] for [the veteran] and their family". R. at 74. In April 1996, the RO found the veteran incompetent for purposes of handling his own VA funds. R. at 88.

In the September 16, 1997, BVA decision here on appeal, the Board denied the appellant's claim for DEA. R. at 3.

## II. Analysis

### *A. Preliminary Matter*

The Court has received two responses from the appellant to the Court's May 2000 supplemental-briefing order; the first was received on August 4, 2000, and the other on September 7, 2000. Predating both of these filings was an August 1, 2000, request for an extension of time to file

3

her response, which was otherwise due on August 4, 2000. The Court did not act on that extension motion until after August 4, 2000, and thus it appears that the appellant's August 4, 2000, memorandum was submitted in order to comply with the August 4, 2000, deadline that, at that time, was in effect. After the Court granted the requested extension, she filed her September 7, 2000, memorandum. The second filing does not address the first memorandum, nor has the appellant at any time filed a document with the Court to explain the double filing. The second memorandum appears to be identical to the first memorandum in all important respects, and the Secretary has not objected to the double filing.

Rather than further delay this case by ordering the appellant to clarify which response she intends as her response to the Court's order, the Court assumes that the more recent, September 7, 2000, memorandum, is the document that the appellant intends to represent her response to the Court's May 2000 order. We assume this because it was filed after a requested extension had been granted and because, if the appellant had wished her first memorandum to serve as her response, there would have been no reason for her to file a second memorandum. Hence, the Court will direct the Clerk of the Court to file the September 7, 2000, memorandum on the day that it was received and to return to the appellant her August 4, 2000, memorandum.

### B. Applicable Law

It is not disputed that any DEA eligibility to which the appellant may be entitled would arise under 38 U.S.C. § 3501(a)(1)(D), which defines as a person eligible for DEA, inter alia, "the spouse of any person who has a total disability permanent in nature resulting from a service-connected disability". The period of time during which a person is eligible for DEA under section 3501(a)(1)(D) is set forth in 38 U.S.C. § 3512, which states, in pertinent part:

> (b)(1) No person made eligible by section 3501(a)(1) . . . (D) of this title may be afforded educational assistance under this chapter beyond 10 years after *whichever of the following last occurs*:

> (A) The date on which the Secretary first finds the spouse from whom eligibility is derived has a service-connected total disability permanent in nature.

(B) The date of death of the spouse from whom eligibility is derived who dies while a total disability evaluated as permanent in nature was in existence.

(C) The date on which the Secretary determines that the spouse from whom eligibility is derived died of a service-connected disability.

. . . .

(3)(A) Notwithstanding the provisions of paragraph (1) of this subsection, any eligible person (as defined in clause (B) or (D) of section 3501(a)(1) of this title) may, subject to the approval of the Secretary, be permitted to elect a date referred to in subparagraph (B) of this paragraph to commence receiving educational assistance benefits under this chapter. The date so elected shall be the beginning date of the delimiting period applicable to such person under this section.

(B) The date which an eligible person may elect under subparagraph (A) of this paragraph is any date during the period beginning on the date the person became an eligible person within the meaning of clause (B) or (D) of section 3501(a)(1) of this title and ending on the date determined under subparagraph (A), (B), or (C) of paragraph (1) of this subsection to be applicable to such person.

38 U.S.C. § 3512(b) (emphasis added). The Secretary's regulation implementing section 3512 provides, in pertinent part:

This section states how VA will compute the beginning date, the ending date and the length of a spouse's . . . period of eligibility. The period of eligibility of a spouse computed under the provisions of paragraph (a) of this section will be recomputed under the provisions of paragraph (b) of this section if her or his status changes to that of surviving spouse.

(a) *Beginning date of eligibility period - spouses*. . . .

(2) The beginning date of eligibility--

. . . .

(ii) For spouses for whom VA made a final determination of eligibility before October 28, 1986, shall be--

(A) The effective date of the rating, or

5

> (B) The date of notification, whichever is more advantageous to the spouse.
>
> . . . .
>
> (c) *Ending date of eligibility period.* (1) The period of eligibility cannot exceed 10 years . . . .

38 C.F.R. § 21.3046(a), (c) (2000). The above-quoted portion of § 21.3046 has not been amended during the course of the adjudication of this claim.

### C. BVA Determination of Appellant's DEA-Eligibility Period

The Board denied the appellant's DEA application because it determined that her eligibility for DEA had expired before she began attending classes in August 1994. The Board reasoned as follows:

> Controlling law provides that a spouse of a veteran who has a total disability permanent in nature resulting from a service-connected disability is eligible to receive [DEA]. 38 U.S.C. § 3501(a)(1)(D). ***This eligibility, however, is limited to a ten-year period following the date on which the VA first finds the spouse from whom eligibility is derived has a service-connected total disability permanent in nature***. 38 U.S.C. § 3512(b)(1)(A); 38 C.F.R. § 21.3046(c)(1).
>
> . . . .
>
> In this case, the RO determined by a July 1983 rating decision that the veteran's dependents were entitled to [c]hapter 35 benefits. . . . In accordance with applicable law, therefore, the appellant's [c]hapter 35 eligibility date was August 22, 1983. As the appellant may not be afforded [DEA] beyond ten years after the eligibility date, the delimiting date occurred on or about August 22, 1993. 38 U.S.C. § 3512(b)(1)(A); 38 C.F.R. § 21.3046(c)(1).

R. at 4 (emphasis added).

*1. Date of Termination of DEA-Eligibility Period.* The Board concluded that the appellant's DEA eligibility period terminated "on or about August 22, 1993." R. at 4. Although a Board determination of the proper effective date of a particular VA benefit is a finding of fact, *see*, *e.g.*, *Hanson v. Brown*, 9 Vet.App. 29, 32 (1996), in this case the Board's determination was supported exclusively by citation to 38 U.S.C. § 3512(b)(1)(A) and 38 C.F.R. § 21.3046(c)(1), regarding the effective dates of DEA eligibility (R. at 4). Neither of those provisions has yet been examined by this Court in this context; thus, the Court is faced with a question of law -- one of statutory

6

interpretation -- that "is to be made by the Court de novo." *Trilles v. West*, 13 Vet.App. 314, 321 (2000) (en banc) (citing *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc)).

The first question to examine is whether section 3512(b)(1)(A) supports the Board's position that the appellant was not eligible for DEA for classes begun in August 1994. "The starting point in interpreting a statute is examining the language itself, for 'if the intent of Congress is clear, that is the end of the matter.'" *Trilles*, *supra* (quoting *Cacatian v. West*, 12 Vet.App. 373, 376 (1999)). "The plain meaning of the statute is found in examining the specific language at issue and the statute's overall structure." *Ibid.*

The statute lists three dates "beyond 10 years after whichever . . . last occurs" no DEA may be provided. 38 U.S.C. § 3512(b)(1). The first of those three dates is "[t]he date on which the Secretary first finds the spouse from whom eligibility is derived has a service-connected total disability permanent in nature." 38 U.S.C. § 3512(b)(1)(A). According to the ROA, the RO made such a finding in June 1980 (R. at 27-28) and then revisited that finding in July 1983 (R. at 34). The Board determined that July 1983 was the date that the Secretary first found, in accordance with subsection (b)(1)(A), that "the veteran's dependents were entitled to [c]hapter 35 benefits" (R. at 4), and the parties agree on the use of that date as the date of the initial RO determination of DEA eligibility. Secretary's July 5, 2000, Supplemental Mem. at 3; Appellant's Mem. at 7. There is a plausible basis in the record for that BVA determination, that is, the July 1983 RO decision (R. at 34), and the Court will thus not question that finding of fact. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990) ("if there is a 'plausible' basis in the record for the factual determinations of the BVA . . . , [the Court] cannot overturn them"). Although the appellant argues that notice of that July 1983 decision was not properly effectuated and, therefore, that it cannot serve as the beginning date of her DEA-eligibility period (Appellant's Mem. at 7-11), resolution of that question is not necessary to the disposition of this appeal because, for the reasons set forth below, we will hold that the appellant's eligibility is not predicated on the date that the RO provided notification of its determination that the veteran's dependents were eligible for DEA. Rather, the Court assumes arguendo that July 1983 was "[t]he date on which the Secretary first f[ound that] the spouse from whom eligibility is derived ha[d] a service-connected total disability permanent in nature", in accordance with 38 U.S.C.

7

§ 3512(b)(1)(A), and, by virtue of that assumption, we conclude that the first of the three events listed in section 3512(b)(1) has occurred.

The second and third of the three dates "beyond . . . which[ ]", no DEA may be provided, 38 U.S.C. § 3512(b)(1), both involve the death of the veteran, 38 U.S.C. § 3512(b)(1)(B), (C); therefore, those dates could not have occurred as of the date of the BVA decision because the veteran was alive at that time (and, as far as we know, is alive today).  Section 3512(b)(1) indicates that DEA cannot be provided more than ten years "***beyond*** . . . whichever" of the three events described in subparagraphs (b)(1)(A), (B), and (C), "***last***" occurs.  38 U.S.C. § 3512(b)(1) (emphasis added). Because the last of those three events had not occurred when the BVA denied the appellant's DEA claim, the Court holds that the "plain meaning" of the statute does not support the BVA's conclusion in this case.  *See Trilles*, *supra*; *see also Gardner v. Derwinski*, 1 Vet.App. 584, 587-88 (1991) (*Gardner I*) (*"*Where a statute's language is plain, and its meaning clear, no room exists for construction.  There is nothing to construe.").  Contrary to the assertion of our dissenting colleague that the Court's interpretation of the statute "renders [section] 3512(b)(1) meaningless", Dissent, *infra* at __, this opinion holds simply that the 10-year period described in subsection (b) does not begin until, as the statute says on its face, the last of the three possible alternatives set forth in subsection (b)(1) has been eliminated.

The Court notes that the Secretary has been invited to produce -- but has not produced -- any legislative history or other evidence indicating that Congress intended section 3512(b)(1) to be read otherwise.  Indeed, he concedes that "there is not a great deal of enlightenment that may be taken from the legislative history." Secretary's Mem. at 10.  Nor has the Court through its own efforts been able to find any illuminating evidence as to the Congressional intent underlying the alternatives provided in section 3512(b)(1).  Hence, even if the Court were to find the text of the statute ambiguous to a degree that resort to secondary evidence of legislative intent was warranted, it does not appear that any such evidence exists.  *See*, *e.g.*, *United States v. Hohri*, 482 U.S. 64, 71 (1987) ("[b]ecause the statute is ambiguous, Congressional intent is particularly relevant to our decision"); *Trilles*, *supra.*

Furthermore, even if the Court were to conclude, which it does not, that the statutory provisions are ambiguous, any such ambiguity would have to be resolved in the appellant's favor.

*See Brown v. Gardner*, 115 S.Ct. 552, 555 (1994) (*Gardner II*) ("interpretive doubt is to be resolved in the veteran's favor"); *Forshey v. Gober*, 226 F.3d 1299 (Fed. Cir. 2000) (applying *Gardner II*); *Allen v. Brown*, 7 Vet.App. 439 (1995) (en banc) (applying *Gardner II* in choosing between plausible statutory constructions of 38 U.S.C. § 1110).

Although we conclude that the statute does not **compel** the Board to find the appellant **in**eligible for DEA prior to ten years after the occurrence of the last of the three events listed in section 3512(b)(1)(A)-(C), the question remains as to whether the statute **permits** the Board to so find, based on the only other provision cited by the Board in support of its finding, that is, 38 C.F.R. § 21.3046(c)(1). R. at 4. That regulation states: "The period of [DEA] eligibility cannot exceed 10 years". 38 C.F.R. § 21.3046(c)(1). For the following reasons, we hold that the Secretary's limitation of that period to a fixed term of ten years is unlawful and thus that the BVA was not permitted to find the appellant ineligible for DEA for the reasons set forth in its decision.

The fifth question presented in the Court's May 2000 supplemental briefing order inquired into "the statutory basis and justification for the regulatory limitation of eligibility to a period of '10 years'" set forth in § 21.3046(c). *Ozer*, 13 Vet.App. at 460. The responses of the appellant and the amicus to this question were that "[t]here is no statutory basis for" that 10-year limitation. Appellant's Mem. at 19; *see also* Amicus Br. at 16 ("[t]here does not appear to be any statutory basis for the 10[-]year limitation"). The Secretary responds that section "3512(b)(1)(A) establishes the criteria for the commencement of the eligibility period" and "also . . . provides that benefits under the DEA program must be paid prior to the tenth anniversary of the commencement date." Secretary's Mem. at 7. However, as discussed above, section 3512(b)(1)(A) provides only one of three events "beyond ten years after . . . the . . . **last**" of which occurs no DEA is authorized. 38 U.S.C. § 3512(b)(1) (emphasis added). Thus, the statutory subparagraph cited by the Secretary does **not** provide any information as to the "commencement of the eligibility period", nor does it establish a fixed 10-year period of such eligibility. The parties have not provided evidence of a statutory basis for the fixed 10-year period provided for in § 21.3046(c), and the Court is not aware of any such basis.

Moreover, all other VA educational and vocational-rehabilitation assistance programs created by title 38 **do** appear to have delimiting periods fixed by statute at a term of years. *See* 38 U.S.C.

9

§§ 3031(a) ("the period during which an individual entitled to educational assistance under this chapter may use such individual's entitlement expires at the end of the 10-year period beginning on the date of such individual's last discharge or release from active duty"), 3103(a) ("a rehabilitation program may not be afforded to a veteran under this chapter after the end of the twelve-year period beginning on the date of such veteran's discharge or release from active military, naval, or air service"), 3232(a)(1) ("educational assistance benefits shall not be afforded an eligible veteran under this chapter more than 10 years after the date of such veteran's last discharge or release from active duty"), 3462(a)(1) ("no educational assistance shall be afforded an eligible veteran under this chapter beyond the date 10 years after the veteran's last discharge or release from active duty"). Because Congress created what appear to be fixed periods of specific duration for all title 38 educational or vocational assistance programs *except* for the DEA program contained in chapter 35, as to which a more flexible period was created, the Court can assume only that Congress intended that DEA eligibility would not be limited to such a fixed period. *See Saunders v. Secretary of Dept. of HHS*, 25 F.3d 1031, 1036 (Fed. Cir. 1994) ("if Congress had intended such a result, we believe that Congress would have made its intention clear in the statute"); *Camarena v. Brown*, 6 Vet.App. 565, 567 (1994) (where Congress uses "oblique language" in statute that otherwise contains specific language, Court assumes Congress did not intend a specific result).

Because § 21.3046(c) imposes a 10-year limitation on the provision of DEA that was not contained in or authorized by 38 U.S.C. § 3512, or any other provisions of title 38 of which the Court is aware, we must hold, as we have held in similar cases in the past, that the regulation cannot stand. *See, e.g., Skinner v. Brown*, 27 F.3d 1571, 1575 (Fed. Cir. 1994) (supporting the result of this Court's decision in *Cole v. Derwinski*, 2 Vet.App. 400 (1992), *aff'd*, *Cole v. Brown*, 35 F.3d 551 (Fed. Cir. 1994), to strike down limitation to title 38 benefit added by Secretary but not provided by statute)); *Gallegos v. Gober*, 14 Vet.App. 50, 57 (2000) (striking down regulation promulgated by Secretary "to the extent that" that regulation "might be read as" adding requirement to those set forth in statute); *Lee (Raymond) v. West*, 13 Vet.App. 388, 394-95 (2000) ("any issuance by the Secretary of . . . regulations . . . may not be inconsistent with the statutory authority granted"); *Davenport v. Brown*, 7 Vet.App. 476, 482 (1995) ("[although] the Secretary is authorized to promulgate regulations that are consistent with title 38, U.S. Code, *see* 38 U.S.C. § 501(a), the Secretary is not

10

authorized to disguise the creation of additional requirements or limitations as interpretative regulations" (citing, inter alia, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984))). To the extent that the Secretary's regulation may have been an attempt to fill a perceived gap in the statute -- and, based on our review, above, of similar provisions within title 38 (i.e., 38 U.S.C. §§ 3031(a), 3103(a), 3232(a)(1), 3462(a)(1)), the Court is by no means convinced that any gap is present therein -- the Court nonetheless is required to construe such remedial provisions liberally in favor of the beneficiary of the legislation in question. *See Gallegos*, 14 Vet.App. at 56 (Secretary may not create obligations not set forth in statute under guise of filling nonexistent gap in that statute); *Lee (Raymond)*, 13 Vet.App. at 295-96 (reviewing "statutory scheme at issue" in that case and concluding that Congress therein "demonstrated that it knew well how to provide time restrictions as to the submission of applications" and thus Secretary's imposition of time restriction was unlawful when Congress had not similarly provided for such time restriction); *Bernier v. Brown*, 7 Vet.App. 434, 438 (1995) (holding Secretary's gap-filling regulation in question was "inconsistent with the statute and cannot stand"); *cf. Gardner I* and *II*, both *supra* (holding that deference is not due to VA regulation that is contrary to meaning of text of statute); *Disabled American Veterans v. Gober*, 234 F.3d 682, 691-92 (Fed. Cir. 2000) ("*Chevron* deference applies if congress is either silent or unclear on a particular issue").

Hence, the Court holds that the appellant's eligibility for DEA had not terminated as of the date that she submitted her application for DEA for classes beginning in August 1994, and the Court will reverse the BVA decision in that regard and remand the matter for appropriate further adjudication consistent with our determination that the appellant's DEA delimiting period has not expired. The Court notes that the parties do not dispute the Board's determination that the appellant's DEA-eligibility period had begun on a date prior to August 1994 and, therefore, that issue is not before the Court today.

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court reverses the September 16, 1997, BVA decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement

of reasons or bases, *see* 38 U.S.C. §§ 3501(a)(1)(D), 3512(b), 5107, 7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) -- all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). The Secretary's motion is denied. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

The Clerk of the Court is directed to file the memorandum received from the appellant on September 7, 2000, as of that date of receipt, and to return to the appellant the memorandum received by the Court on August 4, 2000.

REVERSED AND REMANDED.

HOLDAWAY, *Judge*, dissenting: I respectfully dissent with the holding of the majority. What we have here is two conflicting statutes. 38 U.S.C. § 3512(b)(1) and 38 U.S.C. § 3512(b)(3). There is no question that § 3512(b)(1) provides a 10-year limitation on eligibility for DEA benefits. The question is whether § 3512(b)(3) also provides for that 10-year limitation. The majority says that it does not. The majority assumes that since Congress created fixed periods of specific duration for all title 38 education or vocational assistance programs except for the DEA program, Congress did not intend for DEA to be limited to any fixed period. In the guise of "interpretation," the majority in fact is rewriting the statute to vitiate one section of the law (§ 3512(b)(1)) and fill in a gap in another section that Congress, through sloppy legislation, failed to do. The result is good, in

12

terms of equity for the appellant, but in arriving at this result, the Court renders § 3512(b)(1) meaningless.

I take note, with some amusement, of the majority opinion's attempt to rebut my dissent. The amusement stems from using the term "plain meaning" in connection with this, to put it mildly, convoluted and essentially indecipherable statute. However, my quarrel is not with my colleagues as much as it is with the shoddy legislation that enticed them to assume a legislative role rather than a judicial one. I do not repine. The result is, perhaps, good as equity if not as law.