# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-158

MEMA R. DELA CRUZ, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided   August 21, 2001)

*Sean A. Kendall* was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Mary Ann Flynn*, Deputy Assistant General Counsel; and *Debra L. Leach* were on the pleadings for the appellee.

Before  FARLEY, HOLDAWAY, and IVERS, *Judges*.

IVERS, *Judge*:  Appellant Mema Dela Cruz appeals the January 22, 1999, decision of the Board of Veterans' Appeals (BVA or Board), which determined that she was not entitled to recognition as the surviving spouse of a veteran, for purposes of reinstatement of VA death pension benefits.  On November 17, 2000, the Court, in a single-judge memorandum decision, affirmed the Board's decision.  The appellant filed a motion for reconsideration of that decision, and the Secretary, in response to an order of the Court, filed a response to the motion.  The Court now withdraws the November 17, 2000, memorandum decision, and issues this opinion instead. *See generally Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990); 38 U.S.C. § 7254(b).

Initially, the Court recognizes an important point of clarification.  The Court acknowledges the Board's correction in terminology regarding the surviving spouse benefits that were originally awarded in this case.  *See* Record (R.) at 25-26, 52, 55.  The appellant received death pension benefits, not dependency and indemnity compensation (DIC), and the Board correctly observed that

a recent change in the law with respect to DIC has no bearing on the issue in this case. *Id*.; *cf.* *Cacatian v. West*, 12 Vet.App. 373 (1999) (discussing 1998 change in law with respect to restoration of prior eligibility for DIC benefits).

## I. RELEVANT BACKGROUND

In a March 1996 decision, the Board determined that the appellant did not meet the requirements of the statutory definition of "surviving spouse," so that she was not eligible for any benefits that could be based on that status. R. at 361-72. In a 1998 review of the March 1996 BVA decision, the Court found that the Board had not provided adequate reasons or bases in support of its conclusion, and remanded the matter for readjudication. R. at 419-25; *see Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990); 38 U.S.C. § 7104(d). The Court's June 1998 remand decision contains a complete statement of the factual circumstances in this case. *Cruz v. West*, No. 96-639, 1998 WL 384867 (Vet. App. June 19, 1998). Only those facts relevant to disposition of this appeal will be discussed here.

Following the Court's remand, the appellant did not present additional evidence, but did present, through her attorney, written argument to the Board. R. at 434-38; *see Quarles v. Derwinski*, 3 Vet.App. 129 (1992) (stating that an appellant is entitled to submit additional evidence and argument concerning a question at issue upon remand). In the remand decision, the Court specifically directed the Board to consider whether the language of 38 U.S.C. § 101(3), "held himself or herself out openly to the public to be the spouse of such other person," was applicable when, even though the holding out might have occurred, a spousal relationship was a legal impossibility. R. at 424; *Cruz*, 1998 WL 384867, at *4.

In the BVA decision now on appeal, the Board not only responded to the question posed by the Court, but provided additional substantial analysis on the issue of eligibility for VA surviving spouse death pension benefits. R. at 14-25. The Board found that the extensive evidence showing that, following the death of the veteran, the appellant had lived with a person of the opposite sex and held herself out in public as his spouse, was more credible than the contradictory evidence of record. R. at 17-21. The Board found further that Congress, when amending 38 U.S.C. § 101(3) in 1962, contemplated the situation presented by the facts in the instant case. R. at 22-25. That is, Congress

2

intended that the statute exclude from eligibility for VA surviving spouse benefits any spouse of a deceased veteran who lives with and openly holds herself or himself out in public as the spouse of another person, regardless of the existence of a legal impediment to the couple attaining a legally valid marriage. *Id*.

The Board concluded, "The credible and persuasive evidence therefore is against th[e] appellant's claim of entitlement to recognition as the veteran's surviving spouse, for the purposes of reinstatement of VA death pension benefits[,] and is not in relative equipoise. Accordingly, the appellant's claim is denied. 38 U.S.C.[ §] 5107; 38 C.F.R. § 3.55(a)(4)." R. at 25.

## II. ANALYSIS

### A.  38 U.S.C. § 101(3)

In 1988, when the appellant's surviving spouse benefits were terminated, in 1990, when she filed the claim underlying this appeal, and throughout the pendency of the appeal, the definition of "surviving spouse" under veterans benefits law has essentially been:

> [A] person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death . . . and who has not remarried or (in cases not involving remarriage) has not since the death of the veteran, and after September 19, 1962, lived with another person and held himself or herself out openly to the public to be the spouse of such other person.

38 U.S.C. § 101(3). Surviving spouses of veterans may receive pension benefits pursuant to 38 U.S.C. § 1541.

In 1962, Congress amended 38 U.S.C. § 101(3), in part to adopt a VA administrative rule that had been the subject of a legal challenge. *See* S. Rep. No. 1842, 87th Cong. 2nd Sess. 1962, *reprinted in* 1962 U.S.C.C.A.N. 2589; R. at 22-25. The administrative rule had allowed for a presumption of remarriage, regarding disqualification for VA benefits under 38 U.S.C. § 101(3), when certain facts existed. *Id.* In the explanation of the bill to amend 38 U.S.C. § 101(3), Congress acknowledged that some recipients of VA "widow's benefits" (now surviving spouse benefits) were avoiding the remarriage bar to payment of those benefits, even though they were in relationships with

men and were holding themselves out to the public to be their wives. *Id*. The explanation continued:

> The bill establishes a statutory test to be applied by [VA] in such cases, providing for the termination of benefits where the widow of a veteran lives with another man and holds herself out to the public to be the wife of the other man. Enactment of this provision would amount to statutory confirmation of the [VA] rule, with the addition of two more restrictive factors.

*Id*.

One of the restrictive factors, relevant to this appeal, concerned VA's provision that the presumption of remarriage would *not* apply, and a claimant widow's benefits would *not* be affected, where an impediment prevented a legal marriage between the widow and a man with whom she was living. *Id*. For example, an existing, legally valid marriage between the man and a woman *other than* the veteran's widow would be an impediment that would cause the presumption of remarriage not to apply to the widow, without regard to her cohabitation with the man or how openly she held herself out to be his wife.

In the 1962 bill amending 38 U.S.C. § 101(3), Congress explicitly found that an impediment to a legal marriage between a veteran's widow and a man was *not* material to the determination of whether the statutory presumption of remarriage applied to her. *Id*. Following the 1962 amendment, a widow who lived with another man and held herself out to the public to be his wife would be presumed to be married to that man, and ineligible for VA "widow's benefits," without regard to whether the man was legally married to another woman.

As the Court has previously noted, Congressional enactments subsequent to 1962 have permitted reinstatement of surviving spouse status when certain qualifying circumstances exist. *See Cacatian*, 12 Vet.App. at 375. Specifically, if a person qualified as a surviving spouse under 38 U.S.C. § 101(3) on October 31, 1990, and could not thereafter be presumed to have remarried pursuant to that statute, that person could be considered a surviving spouse for purposes of determining eligibility for VA benefits. *Id*.; *see also* 38 C.F.R. § 3.55(a)(4) and (6).

In this case, the Board's factual findings showed that the appellant was not a surviving spouse, according to the statutory definition, on October 31, 1990, but that her presumed marriage existed continuously from the late 1980s until mid-1993. R. at 12-13; *see Cruz*, 1998 WL 384867,

4

at *3. The Court finds that the Board thoroughly discussed the factual determinations that led to its conclusion that the appellant was not entitled to recognition as the surviving spouse of a veteran for purposes of reinstatement of VA death pension benefits. R. at 8-26. The Court finds that the evidence of record provides a plausible basis for the Board's factual conclusions, and they are not "clearly erroneous." *See Cacatian, supra*, (noting as "factual determinations" the Board's findings that the appellant had been the legal spouse of a deceased veteran, and had lived with and held herself out as the wife of another man); *Gilbert*, 1 Vet.App. at 52-53; 38 U.S.C. § 7261(a)(4).

The Court finds further that the Board accurately and correctly applied the statutory definition of "surviving spouse" to the facts of this case. *See* 38 U.S.C. § 7261(a). The Court commends the Board's thorough analysis of the legislative history of 38 U.S.C. § 101(3) with respect to this appeal. *See Hermogenes v. Brown*, 9 Vet.App. 75, 78 (1996) (noting that Supreme Court has held that an administrative agency's interpretation of a statute is entitled to deference when not inconsistent with the statutory mandate and when consistent with the policy that Congress sought to implement).

### B. Appellant's Motion for Reconsideration

#### 1. Failure to Discuss Evidence Concerning Cohabitation

In her current motion, the appellant contends that the Board has not provided adequate reasons or bases for its conclusion that she lived with another man after the death of her veteran husband. Appellant's Motion (Mot.) at 4-7; *see* 38 U.S.C. § 7104(d)(1). The appellant supports this argument with two assertions. First, she states that the Board failed to comply with 38 U.S.C. § 7104(d)(1) because "it d[id] not discuss the evidence concerning cohabitation." Appellant's Mot. at 5. The appellant argues that the Board made only a conclusory statement concerning cohabitation. *Id*.

The appellant has based this argument on the *old*, March 26, 1996, BVA decision. The appellant quoted page 9 of the old decision, which stated, "[T]he overwhelming evidence of cohabitation cannot be challenged by the inconsistent, spotty evidence to the contrary." See R. at 369; Appellant's Mot. at 5. In the June 1998 remand decision, the Court addressed this inadequacy in the March 26, 1996, BVA decision, which is not the decision that is the subject of the appeal presently before the Court.

The January 22, 1999, BVA decision that is before the Court discusses the evidence

concerning cohabitation at great length, on pages 14 through 21. The Board noted that the record contained written and sworn statements from 1988 and 1989, made by the appellant's children, her sisters, the man with whom she had lived, and even the appellant, confirming that she had lived with the man as if she was his wife. R. at 15-16; *see* R. at 84, 88-127. The Board observed further that evidence compiled in 1994 included testimony from a neighbor of the appellant, the mother of the man with whom the appellant lived, and 11 disinterested persons from their neighborhood that "it was common knowledge that during the late 1980's the couple started living together as husband and wife." R. at 16.

Having noted its "duty as the fact finder to analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and to provide reasons for its rejection of any material evidence favorable to the appellant," (R. at 15), the Board discussed evidence in the record that contradicted the evidence of cohabitation. R. at 19; *see Gilbert*, 1 Vet.App. at 56-57. The Board noted statements from 1992, 1993, and 1995, made by the man with whom the appellant lived and his legal wife, by the appellant's friends, and by the appellant and three others, that the couple had *not* lived together as husband and wife. R. at 19.

The Board found, however, that some of the persons who made the statements in the 1990's had made statements to the contrary in 1988, that is, had stated that the couple *had* lived together. *Id*. The Board found further that additional statements obtained for a 1994 field investigation report, and the overall testimony from 1988 presented a credible and persuasive version of events that confirmed cohabitation. R. at 20-21. The Board concluded as follows:

> [A]fter weighing and analyzing the credibility and probative value of the evidence discussed above, the Board finds that the June 1988 letter from [the appellant's son], the September 1988 field investigative report and photographs, all of which maintain that the appellant lived with a person of the opposite sex after the death of the veteran and held herself out [to] the public as his spouse, is more credible and persuasive than any other evidence of record. The evidence is more credible and persuasive because it is consistent with the overall version of events relayed at the time and consistent with the contemporaneous [sic] field investigative report assembled in January 1994, which is comprised of corroborating sworn statements from disinterested witnesses as well as the mother of [the man with whom the appellant lived] and his legal spouse.

The evidence supporting the appellant's claim, [that is] the January 1992 joint affidavit; March 1992 hearing testimony; May 1993 affidavits; and April and May 1995 statements, lacks credibility and is of little or no probative value because it is inconsistent with the version of events presented in 1988 and was submitted by interested and/or inherently biased witnesses. [*See Caluza v. Brown*, 7 Vet.App. 498, 511 (1995) (discussing credible testimony and impeaching credibility).] Again, the 1988 evidence contained within the field investigative report is substantiated and corroborated by various statements contained within that report along with a January 1994 field investigation report which contains corroborating statements from disinterested witnesses, whereas the March 1992 hearing testimony and May 1993 affidavits were presented by the appellant's friends and the April and May 1995 statements were only submitted after the [death of the man with whom the appellant lived].

R. at 21. The Court finds no merit in the appellant's assertion that the Board failed to comply with 38 U.S.C. § 7104(d)(1) because "it d[id] not discuss the evidence concerning cohabitation." Appellant's Mot. at 5. The Court concludes that the Board's discussion of the evidence is in complete compliance with the requirements of 38 U.S.C. § 7104(d)(1).

### 2. Failure to Discuss All Lay Evidence

Next, the appellant asserts that the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000), amended 38 U.S.C. § 5107(b), regarding the benefit of the doubt afforded claimants for VA benefits, so that "it is now mandatory that the BVA discuss all lay evidence." Appellant's Mot. at 6. The appellant alleges that the Board did not "discuss the lay evidence against the finding of cohabitation." Appellant's Mot. at 7. The Secretary has responded to the appellant's contention that the VCAA requires a remand with an assertion that this case "is not impacted by the VCAA." Appellee's Response to Court Order.

As discussed above, the Court finds that the Board adequately considered and discussed all of the evidence of record, including the lay evidence that contradicts the evidence of cohabitation. We must consider, however, whether the VCAA altered the statutory benefit-of-the-doubt rule and, if the rule has been altered, whether the Board's analysis was sufficient even under the current law.

The express purpose of the VCAA is "[t]o amend title 38, United States Code, to reaffirm and clarify the duty of the Secretary of Veterans Affairs to assist claimants for benefits under the

laws administered by the Secretary, and for other purposes." VCAA 114 Stat. 2096. Section 5107(b), title 38, U.S. Code, before and after amendment by the VCAA, states the law with respect to the benefit of the doubt that is afforded a claimant for VA benefits when there is an approximate balance of positive and negative evidence regarding any material issue. The Report from the U. S. House of Representatives that accompanied its bill underlying the VCAA stated that revised section 5107 "restates without any substantive change the requirements in existing law" with respect to the benefit-of-the-doubt doctrine. H.R. Rep. No. 106-781 at 11, *reprinted in* 2000 U.S.C.C.A.N. 2006, 2014.

The relevant text of amended section 5107(b) states, "The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary." VCAA, 114 Stat. 2098. In light of the explicit statement in the Congressional report that the VCAA simply restated what existed in section 5107 regarding the benefit-of-the-doubt doctrine, the Court finds no merit in the appellant's assertion that the new section 5107(b) mandates a discussion of all lay evidence by the Board. The Court has consistently found that a discussion of all evidence is not required when, as in the present case, the Board has supported its decision with thorough reasons or bases regarding the relevant evidence, and further adjudication would not benefit the appellant. *See Stadin v. Brown*, 8 Vet.App. 280, 285-86, and cases cited therein. The development of the evidence in this case is as complete as is necessary for fair adjudication of the appellant's claim, particularly in light of the prior remand by this Court and the thorough reasons and bases given by the Board in the decision presently on appeal. *See Gilbert*, 1 Vet.App. at 57-58 (discussion of interplay between factual determinations and benefit of the doubt).

In the thorough explanation of the reasons and bases for its decision, the Board concluded that the evidence was against recognition of the appellant as a surviving spouse for purposes of reinstatement of VA death pension benefits, not that the evidence was in approximate balance. R. at 4, 25. The Board noted that the record contained contradictory evidence, and properly recognized the Board's "duty as the fact finder to analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and to provide reasons for its rejection of any material evidence favorable to the appellant." R. at 15 (citations omitted).

The appellant has not argued a duty-to-assist issue in raising the VCAA. Neither has she asserted that the notification responsibilities codified by the VCAA apply to her case, or that additional notice would have resulted in any new evidence for her claim. *See* VCAA 114 Stat. 2096-97, § 5103 (claimant must be notified of any information or evidence that Secretary determines is necessary to substantiate a claim). The Court concludes that there is no question that the appellant was fully notified and aware of the type of evidence required to substantiate her claim, and that nothing in the VCAA could change that. The Court concludes further that the extensive factual development in this case, reflected in the record on appeal and in the Board's decision, indicates no reasonable possibility that any further assistance would aid the appellant in substantiating her claim. *See* VCAA 114 Stat. 2097, § 5103A(a)(2) (The Secretary is not required to provide assistance "if no reasonable possibility exists that such assistance would aid in substantiating the claim.").

In his responsive pleading, the Secretary has pointed out that it is not the factual evidence that is dispositive of the present appeal, but rather an interpretation and application of a statute. Appellee's Response at 3. The Court has recognized that enactment of the VCAA does not affect matters on appeal from the Board when the question is limited to statutory interpretation. *Cf. Smith v. Gober*, 14 Vet.App. 227, 231-32 (2000). That is the case here with respect to the appellant's argument regarding 38 U.S.C. § 101(3). In addition, we have found the appellant's argument that the VCAA altered the benefit-of-the-doubt doctrine to be without merit. Finally, for the reasons stated above, we hold that neither the duty to assist nor the duty to notify provisions of the VCAA are implicated in this matter.

### III. CONCLUSION

Accordingly, upon consideration of the record and the pleadings filed for this appeal, and for the reasons stated herein, the appellant's motion for panel reconsideration is granted, and the March 19, 1998, BVA decision is AFFIRMED.

9