Citation Nr: 1134101 
Decision Date: 09/12/11 Archive Date: 09/22/11

DOCKET NO. 02-18 016 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California


THE ISSUES

1. Entitlement to service connection for residuals of shingles.

2. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).




REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

H. E. Costas, Counsel


INTRODUCTION

The Veteran had active military service from August 1984 to December 1984.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from October 2000 and September 2001 rating decisions by the Department of Veterans' Affairs (VA) Regional Office (RO) in San Diego, California.

The Veteran testified before a Decision Review Officer (DRO) in April 2003 and February 2005. The Veteran also testified before the undersigned Veterans Law Judge in June 2006.

In August 2006 and August 2008, the Board remanded the issues on appeal for further development. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issue of entitlement to service connection for an acquired psychiatric disorder, to include PTSD, being remanded is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

There is no competent medical evidence that the Veteran has residuals of shingles that are related to service.


CONCLUSION OF LAW

The criteria are not met for service connection for residuals of shingles. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107(b) (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify & Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2010). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim. Accordingly, notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

Here, the Veteran was sent letters in June 2000, January 2001 and March 2001 that fully addressed the applicable notice elements and were issued prior to the initial RO decisions in this matter. The letters provided information as to what evidence was required to substantiate the claims and of the division of responsibilities between VA and a claimant in developing an appeal.

The Board acknowledges that, in the present case, complete notice was not issued prior to the adverse determination on appeal. However, fully compliant notice was later issued in a March 2006 communication, and the claims were thereafter readjudicated in April 2008. Accordingly, any timing deficiency has here been appropriately cured. Mayfield, 444 F.3d 1328 (Fed. Cir. 2006). 

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment records, as well as post-service reports of VA and private treatment and examination. Moreover, the Veteran's statements in support of the claim are of record. The Board has carefully reviewed such statements and concludes that no available outstanding evidence has been identified. The Board has also perused the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim. 

The Board acknowledges the Veteran's representative's June 2011 request that the matter be remanded for compliance with the August 2008 remand instructions, with regards to obtaining treatment records from Dr. William T. Chapman relating to treatment for herpes zoster. In this regard, the Veteran submitted in July 2010 that he only received treatment for his shingles/herpes zoster at Paradise Valley Hospital and that all records pertaining to his claim had been associated with the record. Accordingly, the Board finds compliance with the August 2008 remand instruction.

For the above reasons, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Analysis

Service connection may be granted for a disability resulting from an injury or disease incurred or aggravated in service. 38 U.S.C.A. § 1110, 1131.

Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished by affirmatively showing inception or aggravation during service. 38 C.F.R. § 3.303(a).

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic."

Continuity of symptomatology is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b).

Service connection may also be warranted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

As noted, essential to the award of service connection is the existence of a current disability. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303; see also Hickson v. West, 12 Vet. App. 247, 253 (1999) (To establish direct service connection for a claimed disorder, there must be (1) medical evidence of current disability; (2) medical, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability.). 

In the present case, the Veteran's service treatment records are devoid of complaints or findings related to shingles. 

The earliest evidence that the Veteran reported, complained of, or was treated for shingles is several years after service, in March 1992. At that time the Veteran was seen at Paradise Valley Hospital for herpes zoster/shingles. A history of childhood chicken pox was noted. He was diagnosed as having an acute episode of herpes zoster. 

The Veteran was afforded a VA examination in February 2008. The Veteran reported a childhood history of chicken pox, approximately at age 6 or 7. Subsequently, in 1992, he developed pain on the left side of his chest with a rash. Since that episode, he alleged recurrent occasional pain on the left upper anterior chest, stiffness on the left side of his neck and a crawling sensation within his skin on the left upper back, behind the left shoulder. Physical examination of the skin did not reveal any deformity, edema, increased heat, redness or rash. There was no abnormal condition of the skin, no residual pigmentation change or scarring. There was mild tenderness to palpation over the left anterolateral chest below the level of the left clavicle. The skin appearance and texture in this are appeared normal, when compared to the opposite side. There was no increased or decreased palpable heat. The Veteran was diagnosed as having shingles (herpes zoster) infection of the left T4 dermatome, treated with antiviral medication, 16 years prior to the VA examination with no visible or palpable skin disorder. The examiner opined that the Veteran suffered from an acute episode of shingles, 16 years prior to the VA examination and the Veteran's current complaints were not representative of postherpetic pain syndrome. The examiner based his opinion on both his experience and the literature, which indicated that that postherpetic pain has a burning characteristic with superimposed stabbing pain episodes, which was not the kind of pain described by the Veteran. 

The Veteran's private treatment provider, Dr. Chapman, submitted, in May 2007, that the Veteran has been diagnosed as having postherpetic pain syndrome and that it is as likely as not that the Veteran's herpes zoster virus was dormant during his period of active service. He submitted that herpes zoster is an infection that lays latent in the central nervous system and may express itself at any time. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against the claim of entitlement to service connection for residuals of shingles. The most compelling evidence against the claim is the fact that shingles was not manifested until 1992, approximately 8 years after the Veteran's military service had ended. While Dr. Chapman has submitted that herpes zoster can remain dormant for many years, the fact that the Veteran did not experience any outbreaks during service, provides compelling evidence against the claim. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000) (ruling that a prolonged period without medical complaint can be considered, along with other factors, as evidence of whether an injury or a disease was incurred in service which resulted in any chronic or persistent disability).

In summary, there is no evidence to show a diagnosis of or treatment for shingles in service. The Veteran's shingles were not diagnosed until many years after service. Moreover, there is no probative evidence that any current residuals of shingles are proximately due to, the result of, or aggravated by service. Accordingly, the Veteran's claim is denied. Essentially, because the Veteran was not diagnosed as having shingles in service and in the absence of evidence showing continuity of symptomatology since service, service connection under 38 C.F.R. § 3.303(b) is not warranted. 

For these reasons and bases, the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for residuals of shingles. The preponderance of the evidence is against his claim, the doctrine of reasonable doubt is not for application. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53- 56 (1990). Accordingly, the appeal is denied.


ORDER

Service connection for residuals of shingles is denied.


REMAND

The Veteran alleges entitlement to service connection for an acquired psychiatric disorder, to include PTSD. The Veteran has submitted in writing and testified that during boot camp he was afraid that he would have to participate in combat. While participating in war games, he saw the gunfire from tanks and he began hearing voices during boot camp. A review of the record demonstrates various psychiatric diagnoses.

The Veteran's service treatment records are silent as to the presence of any psychiatric complaints.

Post-service, a September 1992 report from P. Wroblewski, a clinical psychologist reflects that the Veteran reported that his troubles started after his vehicular injuries in 1990. He had some many emotional indicators it was difficult to tell whether the Veteran had brain damage, depression or passive-dependent personality style. 

A VA outpatient treatment, dated in December 2000, indicated that the Veteran was experiencing flashbacks and difficulty at times distinguishing present experience from past traumatic experiences. The impression was that PTSD symptoms appeared more prominent now but there was no evidence of frank psychosis. 

In July 2000, the Veteran reported having had hallucinations, thought broadcasting, and referential thinking for years. He stated that the problems stemmed from a severe head injury he had had at age 14. Afterwards, while in military service, he became symptomatic but was never treated then or after service. The Veteran was diagnosed as having a psychotic disorder, not otherwise specified, history of head trauma, and questionable psychosis due to head injury. In February 2001, the Veteran impression was PTSD and schizophrenia. 

The medical records associated with the Veteran's award of SSA disability benefits reflect multiple psychiatric diagnoses, including organic mental disorder (chronic brain syndrome), anxiety related disorder, personality disorder, dementia plus personality disorder due to trauma, sociopathic personality disorder, and polysubstance abuse. 

In September 2006, the Veteran was afforded a VA examination. The examiner held that the Veteran did not meet the DSM-IV stressor criteria for a diagnosis of PTSD. The Veteran was diagnosed as having a psychotic disorder, not otherwise specified and passive/aggressive traits. The examiner, however, did not provide an opinion as to whether any current psychosis was in any way related to service. For this reason, the September 2006 VA examination is insufficient to adjudicate the claim.

The Board also notes that in July 2008, a private treatment provider indicated that the Veteran had been receiving treatment for a depressive disorder and PTSD since February 2002 and it was likely that his symptoms were related to service. He also opined that the Veteran's psychiatric condition was complicated by his chronic daily headaches. By means of a separate decision, service connection has been awarded for migraine headaches

Thus, as the Veteran has been diagnosed with various psychiatric disorders, which might be related to his active service and in light of the new theory of entitlement based upon aggravation by a service-connected disability, he should be afforded an additional VA examination to determine the nature and etiology of any currently present acquired psychiatric disorder. See 38 U.S.C.A. § 5103A(d)(2). 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). Expedited handling is requested.)

1. Contact the Veteran and/or his representative and request that they identify all VA and non-VA clinicians who have treated him for any psychiatric disability since service. After securing the proper release forms, VA should attempt to obtain and associate with the claims file any identified records. If VA is unable to obtain any of the identified records, such should be so noted in the record and the Veteran should be so informed so that he may have the opportunity to obtain those records on his own behalf. 

2. Schedule the Veteran for a VA psychiatric examination to determine the etiology of any acquired psychiatric disorder. The claims folder should be made available to the psychiatrist or psychologist for review before the examination. The examination must be conducted following the protocol in VA's Disability Worksheet for VA Initial PTSD examination and Mental Disorders examination. All indicated tests and studies are to be performed, and a comprehensive social, educational, legal and occupational history is to be obtained. Prior to the examination, the claims folder and a copy of this remand must be made available to the psychiatrist or psychologist for review of the case. A notation to the effect that this record review took place should be included in the report of the examiner.

Based on a review of the evidence, evaluation of the Veteran and applying sound medical principles, the examiner must establish whether the Veteran carries a diagnosis of PTSD. If so, the examiner is to offer an opinion as to whether it is at least as likely as not (50 percent probability or greater) that he has PTSD due to a claimed stressors, specifically his experiences during basic training. 

For any psychiatric diagnosis other than PTSD, the examiner should opine whether it is at least as likely as not due to active service. Particularly, with regards to the presence of any psychosis, the examiner should provide an opinion as to whether it is at least as likely as not that the Veteran exhibited a psychosis within a year of his discharge from service.

The examiner must also comment as to whether any currently present psychiatric disorder has been aggravated by his service-connected migraine headaches (representing a permanent worsening of such disability). If aggravation is found, the examiner should attempt to quantify the degree of additional disability resulting from the aggravation.

A clear rationale for all opinions must be provided and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. If the requested opinion cannot be provided without resort to speculation, the examiner should so state and explain why an opinion cannot be provided without resort to speculation.

3. Thereafter, the AMC/RO should readjudicate the Veteran's claim. If the benefit sought on appeal remains denied, the Veteran and his representative should be provided with a SSOC. An appropriate period of time should be allowed for response before the claims file is returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).




______________________________________________
N. Rippel
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs