Citation Nr: 1528181 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 11-04 385 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to a rating higher than 30 percent for status post nephrectomy.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Bridgid D. Houbeck, Counsel



INTRODUCTION

The Veteran served on active duty from June 1951 to June 1955.

This matter has come before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the Houston, Texas, Department of Veterans Affairs (VA) Regional Office (RO). In November 2014, the Board remanded this case for further development.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

For the entire period of this claim, the function of the Veteran's remaining kidney has been normal, with no nephritis, infection, or other pathology.


CONCLUSION OF LAW

The criteria for a rating higher than 30 percent for status post nephrectomy have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.115a, 4.115b, Diagnostic Code (DC) 7500 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record that is necessary to substantiate the claim; that VA will seek to provide; and that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Additionally, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). The Board finds that the required notice was met through correspondence sent to the Veteran during the course of the claim. See September 2008 letter.

Next, VA has a duty to assist the Veteran in the development of the claim, which includes assisting in the procurement of service treatment records and pertinent treatment records and, when necessary, providing an examination. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed. The claims file contains the Veteran's service treatment records, as well as post-service reports of VA and private treatment and examination. Moreover, his statements in support of the claim are of record. The Board has reviewed such statements and concludes that no available outstanding evidence has been identified. The Board has also reviewed the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim.

In compliance with the Board's November 2014 remand, VA obtained additional VA treatment records and associated them with the claims file. VA provided the Veteran with a medical examination in January 2015. This examination contained all information needed to rate the disability. This examiner reviewed the objective evidence of record, documented the Veteran's current complaints, and performed a thorough clinical evaluation. This examiner found no renal dysfunction and no recurrent infections. She also opined that it was less likely than not that the Veteran's status post nephrectomy had aggravated his essential hypertension or history of benign prostate enlargement with voiding dysfunction status post TURP. The medical evidence of record shows that the Veteran's previous voiding dysfunction was associated with his prostate condition and indeed improved with prostate surgery, as noted by this examiner in the medical history portion of the examination. Thus, this opinion, which directly addresses the Veteran's service-connected disability, substantially complies with the Board's request that the examiner explain why a complained-of symptom was or was not due to the service-connected disability. Therefore, this examination is adequate for VA purposes. Thus VA has complied with the November 2014 remand instructions. Stegall v. West, 11 Vet. App. 268 (1998).

For the above reasons, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Analysis

The Veteran was originally grant service connection for nephrectomy in a September 1955 rating decision. At that time, a 30 percent rating was assigned. The Veteran's previous increased rating claims in November 1996 and September 2000 were denied in December 1996 and September 2000 rating decisions, respectively. The Veteran did not appeal any of the earlier rating decisions or submit relevant evidence within one year of issuance.

The Veteran's current claim was received in July 2008.

Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). A claimant, however, may experience multiple distinct degrees of disability, resulting in different levels of compensation, from the time the increased rating claim is filed to the time a final decision is made. See Hart v. Mansfield, 21 Vet. App. 505 (2007). The following analysis is therefore undertaken with consideration that different (staged) ratings may be warranted for different time periods during the period of appellate review beginning within one year of his July 2008 claim. Thus, the Board will consider whether a staged rating is appropriate.

Disability ratings are assigned in accordance with the VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155.

Nephrectomy is rated under Diagnostic Code (DC) 7500 with a 30 percent rating being the minimum evaluation available. 38 C.F.R. § 4.115b. Higher ratings may be assigned based on renal dysfunction if there is nephritis, infection, or other pathology of the remaining kidney. 38 C.F.R. § 4.115b, DC 7500. If the Veteran's rating status-post nephrectomy is rated based on renal dysfunction, he is not entitled to both that rating and the 30 percent minimum rating for loss of a kidney under DC 7500. Therefore, a rating based on renal dysfunction is favorable only if the Veteran meets the criteria for a rating in excess of 30 percent.

Renal dysfunction is rated under 38 C.F.R. § 4.115a. Under this regulation, a 30 percent evaluation is warranted for albumin in the urine, whether constant or recurring, with hyaline and granular casts or red blood cells; or, transient or slight edema or hypertension at least 10 percent disabling under Diagnostic Code 7101. Id. A 60 percent evaluation is warranted for constant albuminuria with some edema; or, definite decrease in kidney function; or, hypertension at least 40 percent disabling under Diagnostic Code 7101. Id. An 80 percent evaluation is warranted for persistent edema and albuminuria with BUN 40 to 80mg% or creatinine 4 to 8mg%; or, generalized poor health characterized by lethargy, weakness, anorexia, weight loss, or limitation of exertion. Id. A 100 percent evaluation is warranted for renal dysfunction requiring regular dialysis, or precluding more than sedentary activity from one of the following: persistent edema and albuminuria; or, BUN more than 80mg%; or, creatinine more than 8mg%; or, markedly decreased function of kidney or other organ systems. Id.

For reference, Diagnostic Code 7101 provides a 10 percent rating for hypertensive vascular disease with diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. 38 C.F.R. § 4.104. Hypertensive vascular disease with diastolic pressure predominantly 110 or more, or; systolic pressure predominantly 200 or more, is rated 20 percent disabling. 38 C.F.R. § 4.104, DC 7101. Hypertensive vascular disease with diastolic pressure predominantly 120 or more is rated 40 percent disabling. Id. Hypertensive vascular disease with diastolic pressure predominantly 130 or more is rated 60 percent disabling. 

Although outside of the appeals period, the Board notes that a November 2006 urology record shows benign prostatic hyperplasia (BPH). The Veteran reported a 75 percent improvement of symptoms with medication. At that time, the Veteran reported that his only residual symptom was urinary urgency. This record also confirms a diagnosis of hypertension. Urinalysis was normal and the physician noted normal renal function.

In a July 2008 contact brief, the Veteran's representative stated that the Veteran suffered constant infections, urinary urgency, very slow stream, and blood in urine once or twice per year.

The Veteran's VA treatment records show severely obstructed urine flow in March 2008, which appears to be attributed to an obstructed bladder neck. An August 2008 record also refers to a retrograde urethrogram (RUG) earlier in the year that confirmed some obstruction of bulbar urethra and small right lateral diverticulum.

In October 2008, the Veteran underwent a VA examination in conjunction with this claim. At that time, he reported urinating every two hours during the day and every hour at night. He had problems starting urination and the urine flow was weak, hesitant, and with decreased force. He had urinary incontinence that did not require a pad or any absorbent material. He did not require an appliance. Regarding the urinary system problem, he had weakness, fatigue, limitation of exertion and renal colic. He had no loss of appetite, weight loss, recurrent urinary tract infections or bladder stones with pain. He did not require any procedures for his genitourinary problem. There was no hospitalization during the last 12 months. He was not on dialysis regularly. The Veteran reported that he does not experience any functional impairment from this condition. Three blood pressure readings were taken with results of 170/103, 144/99, and 169/96. Physical examination found no kidney or urinary tract fistula. There was a depressed scar present on the right flank, measuring about 22 cm by 0.5 cm. The scar had hypopigmentation of less than six square inches and abnormal texture of less than six square inches. There was no tenderness, disfigurement, ulceration, adherence, instability, tissue loss, inflammation, edema, keloid formation, or hyperpigmentation. Diagnostic testing found a complete blood count (CBC) within normal limits with some insignificant abnormalities including a hemoglobin level of 14.6 g/dL and a hematocrit level of 42.8 percent. Comprehensive Metabolic Panel test results were within normal limits without significant findings. Urinalysis was absent protein, sugar, red blood cells, hyaline casts, and granular casts. This examiner noted that the effect of this condition on the Veteran's daily activities was minimal. Additionally, this examiner found that the Veteran's complaint of urinary incontinence was most likely not related to the nephrectomy.

In a December 2009 statement, the Veteran reported hospitalizations in July 2008, July 2009, August 2009, and October 2009. The record includes urology treatment from those dates, but no hospitalization. Instead, his July 2009 and October 2009 VA treatment records specifically noted no hospital admissions since the prior genitourinary encounters.

In his January 2011 VA Form 9, the Veteran reported voiding problems, mild to moderate left kidney pain prior to urination, incontinence, and high blood pressure.

In March 2011, the Veteran called the VAMC and described symptoms to the nurse who suggested a possible urinary tract infection (UTI). In a telephone encounter note two days later, the Veteran denied having a UTI.

A December 2011 renal ultrasound found the Veteran's right kidney to be absent with compensatory hypertrophy of the left kidney. There were no renal calculi or hydronephrosis. This ultrasound also noted prostatic hypertrophy with post void residual, approximately 70 cc.

The Veteran was prescribed cephalexin for urinary infection in July 2012. A December 2012 VA treatment record noted recurrent staph infections. VA treatment records from January 2013 show an active outpatient medication for urinary infection.

In January 2013, the Veteran underwent transurethral resection of the prostate (TURP). The Informed Consent form completed at the time of this surgery specified the reason for treatment as "Blockage of urine flow, bleeding, infections, or other urinary problems due to enlargement of the prostate." Subsequent treatment records show improvement of his urinary symptoms. See e.g., May 2013 and July 2013 treatment records.

In January 2015, the Veteran underwent another VA examination in conjunction with this claim. At that time, the Veteran denied any voiding dysfunction, lethargy, weakness, anorexia, weight loss, limitation of exertion, edema or dialysis. He reported a history of essential hypertension currently under fair control with medication. The examiner also noted a history of voiding dysfunction due to enlarged prostate that had improved following transurethral resection of the prostate (TURP). The examiner found no renal dysfunction. The Veteran's most recent invasive or non-invasive procedure was the February 1952 right nephrectomy. He did not currently have any signs or symptoms due to urolithiasis. The Veteran did not have a history of recurrent urinary tract or kidney infections. There was no nephritis, infection, or pathology of the remaining kidney. The Veteran had an associated scar on his right flank, but it was not painful, unstable, or greater than 39 square cm (6 square inches) in area. Instead it measured 22 cm x 0.5cm. This scar was well healed with no tenderness or instability. Test results for blood urea nitrogen (BUN), creatinine, estimated glomerular filtration rate (EGFR), hyaline casts, granular casts, red blood cells per high power field (RBC/HPF), and proteinuria (albumin) were all normal. The Veteran's disability did not impact his ability to work. Ultimately this examiner found that the Veteran currently had no objective findings of kidney dysfunction with a normal GFR, creatinine, BUN, and normal urinalysis with no albuminuria. Since the Veteran's solitary kidney had normal renal function with no hydronephrosis or renal calculi, this examiner found that it was less likely than not that his service-connected nephrectomy caused or aggravated his essential hypertension or history of benign prostate enlargement with voiding dysfunction status post TURP.

The Veteran also underwent a hypertension examination at that time. The Veteran stated that he forgot to take his medication the morning of this examination. His hypertension treatment plan included continuous medication. The Veteran did not have a history of a diastolic blood pressure elevation to predominantly 100 or more. His blood pressure readings taken that day were 172/92, 170/90, and 172/92. The Veteran's hypertension was not found to impact his ability to work.

Based on the above, the Veteran's status post nephrectomy is characterized by the absence of his right kidney and an associated surgical scar. The Veteran's remaining kidney has not been shown to have nephritis, infection, or other pathology as required for evaluation under renal dysfunction. See 38 C.F.R. § 4.115b, DC 7500. Nevertheless, the Board has considered whether the Veteran has symptoms that would warrant a rating higher than 30 percent under these criteria. Although the Veteran has essential hypertension, it has not been medically linked to his nephrectomy. Moreover, his recorded blood pressure readings are consistently within the range for a 10 percent rating under DC 7101 with a systolic pressure predominantly over 160, but less than 200. See 38 C.F.R. § 4.104, DC 7107. This is insufficient to warrant a higher rating for renal dysfunction. See 38 C.F.R. § 4.115a. Similarly, the record does not show albuminuria, a decrease in kidney function, edema, lethargy, weakness, anorexia, weight loss, limitation of exertion, regular dialysis, or any other finding consistent with the requirements for a higher rating under renal dysfunction. See id. Thus, a higher rating is not warranted.

To the extent that the Veteran has reported urinary symptoms, including voiding and urinary frequency, these have been consistently attributed to his non-service connected benign prostatic hypertrophy and, as per the January 2015 examiner's opinion, this condition was not caused or aggravated by the Veteran's service-connected nephrectomy. As these are not symptoms of the Veteran's service-connected condition, they cannot form the basis for a higher rating.

Finally, the Board has considered whether a separate compensable rating is warranted for the Veteran's associated surgical scar. This scar is not located on the Veteran's head face or neck. See 38 C.F.R. § 4.118, DC 7800. It is not painful or unstable. See 38 C.F.R. § 4.118, DC 7804. The total area of the scar is less than 39 square cm (6 square inches). See 38 C.F.R. § 4.118, DCs 7801-7802. Additionally, it does not limit function. Thus, the Veteran's right flank scar does not meet any of the requirements for a separate compensable rating under 38 C.F.R. § 4.118, DCs 7800-7802, 7804.

In sum, as explained above, the Veteran's current symptoms of status post nephrectomy do not warrant a schedular rating higher than the 30 percent currently assigned. 

The Board must also determine whether the schedular evaluation is inadequate, thus requiring that the RO refer a claim to the Chief Benefits Director or the Director, Compensation Service, for consideration of "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1).

Consideration for an extra-schedular evaluation is warranted when a service-connected disability presents an exceptional or unusual disability picture, meaning that the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment or frequent periods of hospitalization. Id. at 115-116. If either of those elements is satisfied, then the appeal must be referred for consideration of the assignment of an extraschedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321(b)(1); Thun, 22 Vet. App. at 116.

In this case, the schedular evaluation is not inadequate. An evaluation in excess of that assigned is provided for certain manifestations of the service-connected disability, such as renal dysfunction, but the medical evidence reflects that those manifestations are not present in this case. Additionally, the diagnostic criteria adequately describe the severity and symptomatology of the Veteran's disorder, which include the absence of one kidney and associated surgical scar. As the rating schedule is adequate to evaluate the disabilities, referral for extraschedular consideration is not in order.


ORDER

A rating higher than 30 percent for status post nephrectomy is denied.



________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs