Citation Nr: 1725237 
Decision Date: 06/30/17 Archive Date: 07/10/17

DOCKET NO. 12-33 991 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to service connection for a right knee disorder, to include residuals of torn medial meniscus, status post-meniscectomy.


REPRESENTATION

Appellant represented by: Michael Quatrini, Attorney at Law


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

K. Hubers, Associate Counsel

INTRODUCTION

The Veteran had active service from January 1961 to January 1964.

This appeal comes to the Board of Veterans' Appeals (Board) from a December 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Pittsburgh, Pennsylvania.

In February 2013, the Veteran testified before the undersigned Veterans Law Judge (VLJ) via videoconference. The record contains a transcript of the hearing.

In March 2015, the Board remanded this matter for further development and readjudication. The RO substantially complied with the Board's remand instructions, so the Board may proceed to the merits. See Stegall v. West, 11 Vet. App. 268, 271 (1998); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (noting that Stegall requires substantial compliance with remand orders, rather than absolute compliance).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The evidence is in equipoise regarding whether the Veteran's current right knee disorder began during or was otherwise caused by his military service.


CONCLUSION OF LAW

The criteria for service connection for a right knee disorder have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2016).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's VA files. In every decision, the Board must provide a statement of the reasons or bases for its determination, adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review by the Court. 38 U.S.C. § 7104(d)(1); see Allday v. Brown, 7 Vet.App. 517, 527 (1995). Although the entire record must be reviewed by the Board, the Court has repeatedly found that the Board is not required to discuss, in detail, every piece of evidence. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Dela Cruz v. Principi, 15 Vet. App. 143, 149 (2001) (rejecting the notion that the Veterans Claims Assistance Act mandates that the Board discuss all evidence). Rather, the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The points below focus on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake, infra. 

Because the claim is being granted, the Board need not discuss VA's compliance with the duties to notify and assist.

I. Service Connection: General Principles

The Veteran asserts entitlement to service connection for a right knee disability, including as secondary to his service-connected right ankle disability.

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. In order to prevail on the issue of service connection there must be competent evidence of a current disability; medical evidence, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and competent evidence of a nexus between an in-service injury or disease and the current disability. See Shedden v. Prinicipi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

II. Analysis and Conclusions

After a review of the entire record, the Board has determined that service connection is warranted for a right knee disorder.

The existence of a current right knee disorder (to include arthritis and other residuals of a torn medial meniscus) is well-established by the evidence. See, e.g., April 2013 Private Physician Opinion Letter ("x-rays in my office show[] end-stage arthritis involving the medial compartment of the right knee. Patient was also noted with mild patella femoral arthritis."); May 2011 VA Examination (diagnosing "Degenerative arthritis, Right knee" and "Bone chip removal, Right knee, 1970s"). Some degree of arthritis appears to have been present in the right knee from at least as early as 1978. See January 1978 Private Hospital Discharge Summary (patient "who had persistent right knee pain and, because of the suspicion of torn cartilage, recurrent tear of his regenerated cartilage, he underwent an arthroscopy which found simply degenerative changes.").

The Veteran had an in-service injury involving both his right ankle (now service-connected) and his right knee. See December 1963 Service Treatment Record ("Pt was running & tripped sustaining [?] of right knee & some pain", as well as documenting fracture of right ankle in same incident). The question, therefore, is whether there is a causal nexus between the in-service right knee injury and his current right knee disorder.

There are multiple opinions of record, many of which discuss the relationship between the right knee and the service-connected right ankle disability. The greater weight of those opinions is against finding that the Veteran's right knee disability was caused by or aggravated by the right ankle disability. See, e.g., July 2016 VA Examination (providing detailed medical basis for conclusion that right knee disorder is unrelated to the right ankle condition).

With respect to chronicity of symptomatology, the Veteran has consistently reported chronic knee pain since the in-service injury, but he was not diagnosed with degenerative changes of the right knee until 1978, fourteen years after his discharge. See January 1978 Private Hospital Discharge Summary (patient "who had persistent right knee pain and, because of the suspicion of torn cartilage, recurrent tear of his regenerated cartilage, he underwent an arthroscopy which found simply degenerative changes."); January 1978 Private Hospital Note ("he claims that for approximately 10 years he has had problems with the knee popping as well as chronic pain"); October 1988 VA Examination (documenting x-ray findings of "minimal degenerative arthrosis of medial compartment" in the right knee which, together with the early normal examination, indicates post-service onset of degenerative arthritis of the knee); May 1989 VA Examination (noting dislocation of right knee in service); but see November 1980 VA Examination (diagnosing meniscal issues and residuals of meniscectomy, but not arthritis and including x-ray report indicating: "Right Knee: Normal examination."). The evidence does not establish, at least as likely as not, that the Veteran had arthritis during or shortly after service that was characterized by pain. It is as likely or more likely that the initial pain was due to the soft-tissue damage (initially repaired in 1973, prior to the diagnosis of arthritis) and the frequent "popping out" the Veteran describes. See, e.g., January 1978 Private Hospital Note (discussing 1973 surgery to repair cartilage damage); January 1978 Private Hospital Discharge Note ("Chronic pain, right knee, secondary to #1 [(ligamentous laxity of the right knee)] and probably degenerative joint disease as well."). Service connection due to a chronicity of symptomatology is not warranted for the Veteran's right knee arthritis.

However, with respect to direct service connection, the competent evidence of record is in equipoise. 

Importantly, the earliest records of post-service treatment include the Veteran's report that he suffered an initial injury in 1960, prior to service. See January 1978 Private Hospital Note ("In 1960, this patient suffered an initial injury to the right Knee"). No development has been done regarding this reported pre-service injury and there are no medical records documenting it or any residuals. His entrance examination noted no abnormalities of the right knee, so he is presumed to have been in sound condition upon entry. See 38 C.F.R. § 3.304(b).

Although the Veteran has previously been denied service connection for a right knee disability, the claim and denial were based solely upon secondary service connection. The present claim is the first time evidence has been developed regarding whether there is a direct causal nexus between the in-service injury and the current right knee disorder. As the above discussed evidence indicates, the Veteran's right knee arthritis is related to the ligament laxity, cartilage damage, and/or meniscus tear(s) he has suffered. The origin of the ligament laxity and soft tissue damage is, therefore, the key issue.

The only negative opinion on that issue is the opinion of the July 2016 VA examiner. She opined that there was no connection between the current disability and the in-service injury to the knee based on several interpretations of the evidence that are unwarranted. She relied, in part, on the separation examination which revealed no abnormalities. The separation examination took place in November 1963, the documented in-service right knee injury occurred in December 1963. The examiner's reliance on the November 1963 separation examination in concluding that the December 1963 right knee injury did not result in any residuals reduces the persuasiveness of her opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). The examiner relies on the Veteran's report that he "blew out" his knee while playing baseball in the early 1970s. This version of events is unique among the various records and statements regarding the origin of the Veteran's knee troubles, though perhaps not precisely inconsistent with the more contemporaneous records. For example, a 1980 treatment record indicates "old football injuries", rather than baseball injuries, and indicates to the Board that the sports injuries were "old" by the time of the 1973 surgery. See September 1980 Private Treatment Note ("Right knee has been operated in 1973. This was for cartilage removal and repair due to old football injuries."). Moreover, as discussed above, treatment records from 1978 (as well as the Veteran's consistent statements and testimony) indicate that the Veteran had frequent trouble with his right knee "popping out" subsequent to the 1963 in-service injury. The Board is not bound by the VA examiner's factual conclusion regarding the nature of the injury leading to the 1973 surgery and, given the ambiguity in the evidence, finds the examiner's emphasis on evidence of a post-service injury is unwarranted. 

The July 2016 VA examiner also relied on the silence in the service treatment records with respect to "evaluation, diagnosis, or treatment of a medial meniscus injury". As the Veteran has noted on numerous occasions, the service treatment records document a right knee injury, but his treating physicians focused on the fracture of this right ankle (the more obvious and acute issue). Furthermore, the injury occurred in December 1963, he was placed in a full leg cast, and he was discharged in January 1964 shortly after having the cast removed. There were no MRIs or other imaging reports of the right knee that could have diagnosed right knee soft tissue damage. The Veteran has consistently reported continued symptoms and has explained, including at his February 2013 Board hearing, that he did not have the resources for treatment for his continued right knee symptoms. His explanation is credible. His testimony and the nature of the in-service injury and treatment undercuts the heavy reliance that the VA examiner places on the absence of medical documentation of right knee evaluation, treatment, or diagnosis either in the last month of service or in the years leading up to the 1973 surgery.

The record also contains an April 2013 favorable opinion from a private physician (Dr. G.H.). The private physician opined that the right knee condition was more likely than not related to the in-service injury. The physician indicated that the in-service injury ultimately led to surgery with removal of the Veteran's native meniscus which led to his current problems. The physician, upon review of the entire record, opined that, more likely than not, the injury the Veteran "sustained while on active duty caused the tear of the medial meniscus with subsequent surgeries that followed, with further removal of the meniscus, causing destabilization and subsequent acceleration of posttraumatic arthritis."

Dr. G.H.'s opinion plausibly reconciles the available facts into a coherent narrative of the Veteran's right knee history. While the July 2016 VA examiner's supposition that there was no permanent damage during service and that a subsequent injury was responsible for all of the Veteran's soft tissue knee damage is also plausible, the basis of VA examiner's opinion includes irrelevant facts (i.e. normal exam results prior to the in-service injury) and facts that conflict with the Veteran's consistent recollections of the progress of his right knee troubles. The Veteran has provided consistent, and believable, statements regarding the progression of his right knee symptoms and history. Because Dr. G.H.'s May 2013 opinion is more consistent with that credible history, the Board finds that the evidence is at least in equipoise whether there was some initial soft tissue damage to the knee at the time of the in-service injury with additional injuries due, at least in part, to the initial tear of the meniscus. See Nieves-Rodriguez, 22 Vet. App. at 304; Owens v. Brown, 7 Vet. App. 429, 433 (1995). The experts all agree that the Veteran's current knee disorder (including arthritis) is the result of the meniscal injuries that led to the initial, 1973 surgery.

Consequently, the Board finds the evidence is in equipoise regarding whether the Veteran's current right knee disability was incurred in or caused by the documented December 1963 right knee injury and entitlement to service connection for a right knee disorder is granted. Gilbert, 1 Vet. App. at 53-56.


ORDER

Entitlement to service connection for a right knee disorder, to include residuals of torn medial meniscus, status post-meniscectomy, is granted.



____________________________________________
MICHELLE L. KANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs