Citation Nr: 1456934 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 09-42 603 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to service connection for a bilateral hip disability, including as secondary to his service-connected right foot and right ankle disabilities.

2. Entitlement to an evaluation in excess of 20 percent for the residuals of a fracture of the cuboid bone of the right foot.


REPRESENTATION

Appellant represented by: Paralyzed Veterans of America, Inc.


ATTORNEY FOR THE BOARD

A. Gibson, Associate Counsel



INTRODUCTION

The Veteran served on active duty from September 1969 to May 1971.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia.

These claims were remanded in January 2014 for additional development. He was awarded a separate rating of 20 percent for his right ankle, effective from June 16, 2008, following this remand, which he has not appealed. The purposes of the development have been met with regard to his increased rating claim; however, still further development is required before his service connection claim may be adjudicated on its merits. Therefore, the issue of entitlement to service connection for a bilateral hip disability is REMANDED to the Agency of Original Jurisdiction (AOJ).

The Veteran raised the issue of entitlement to service connection for a spinal disability in a November 2014 letter, but this issue has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 
38 C.F.R. § 19.9(b) (2014). 












FINDING OF FACT

The residuals of the Veteran's fracture of the right cuboid bone are severe, and manifest with pain, early flattening of the first metatarsal head, and degenerative joint disease.

CONCLUSION OF LAW

The criteria are met for a 30 percent rating for the Veteran's residuals of fractured right cuboid bone. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.7, 4.71a, DC 5284 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act (VCAA)

In July 2008, the Veteran was provided with the requisite notice as to the evidence and information needed to substantiate his claim. 38 C.F.R. § 3.159 (2014). 

VA has complied with its duty to assist in developing this claim. 38 C.F.R. § 3.159(c). Indeed, his relevant treatment records have been associated with the claims file. He has also been provided with VA examinations to assess the severity of his right foot disability, which are adequate for adjudicatory purposes. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

The AOJ is also found to have complied with the Board's January 2014 remand directives. Stegall v. West, 11 Vet. App. 268 (1998). The Board concludes that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).


Increased Initial Ratings

Disability ratings are assigned in accordance with VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321(a), 4.1 (2014). Separate diagnostic codes (DCs) identify the various disabilities. See generally 38 C.F.R. Part 4 (2014). If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). Reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3 (2014). 

Consistent with the facts found, the rating may be higher or lower for periods of the time under review on appeal, that is, the rating may be "staged." See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). 

The Veteran's right foot disability is currently rated as 20 percent disabling under Diagnostic Code (DC) 5299-5284, which applies to injuries of the foot. 38 C.F.R. § 4.71a, DC 5284 (2014); see also 38 C.F.R. § 4.27 (explaining and setting forth the procedure for assigning hyphenated ratings). Under this Code, moderate foot injury warrants a 10 percent rating; moderately severe foot injury warrants a 20 percent rating; and, severe foot injury warrants a 30 percent rating. If actual loss of the foot is shown, a 40 percent rating is warranted. 38 C.F.R. § 4.71a, DC 5284.

After review of the evidence, the Board finds that a 30 percent rating is warranted, as the Veteran's symptoms are severe. Indeed, at the July 2008 VA examination, he reported that he could only walk for about four minutes. He complained of pain, fatigability, lack of endurance, weakness, stiffness, and swelling. During the examination, he did not have any swelling or tenderness, but X-ray did reveal that he had early flattening of the first metatarsal head, which is abnormal, and early signs of degenerative joint disease. His right foot has continued to be painful, and he was diagnosed with metatarsalgia at the December 2012 VA examination. He wears inserts in his shoes to help alleviate the pain. 

Further, the evidence shows that there has been a substantial increase in his symptoms since he was rated as having moderately severe residuals, warranting a 20 percent rating, in February 1992. The evidence does not show that he has lost the use of his foot, thus a 40 percent rating is not appropriate.

The evidence does not show the Veteran to have acquired pes planus (flat foot), weak foot, claw foot, hallux valgus, hallux rigidus, hammer toe, or malunion or disunion of the tarsal or metatarsal bones. 38 C.F.R. § 4.71a, DCs 5276, 5277, 5278, 5280-5283.

The Veteran does have metatarsalgia, but the maximum rating afforded under DC 5279 in 10 percent. Thus, rating under this code would not avail the Veteran of a higher rating. 38 C.F.R. § 4.71a, DC 5279.

He has also been diagnosed with early degenerative joint disease (DJD), or arthritis. Arthritis is rated under the appropriate codes regarding limited motion pertaining to the joint involved, or, if there is no limited motion, then a 10 percent rating is assigned when there is evidence of involvement of 2 or more major joints or 2 or more minor joint groups. A 20 percent rating is assigned when there is involvement of 2 or more major joints, or 2 or more minor joint groups, with occasional incapacitating episodes. 38 C.F.R. § 4.71a, 5003. The Veteran is being granted a 30 percent rating for the entire period under consideration, from the date of his claim for an increased rating in June 2008; thus, rating his disability under DC 5003 would not result in a higher disability evaluation.

The Board considered whether he is entitled to this 30 percent rating earlier than the date of receipt of his claim. Regulations permit assigning an effective date up to a year earlier than the receipt of the claim, if it is factually ascertainable that the increase occurred within the year before receipt of the claim. 38 C.F.R. § 3.400(o)(2) (2014). Here, there is no evidence regarding his right foot from June 2007 to June 2008. There is evidence of podiatric care in July 2007, but that was of his left foot.

The Board has also considered whether this claim should be referred for an extraschedular rating. 38 C.F.R. § 3.321(b) (2014). In exceptional situations where the rating criteria is inadequate, the Board may refer the case for extraschedular consideration, because the Board is precluded by regulation from assigning extraschedular ratings in the first instance. 38 C.F.R. § 3.321(b)(1). 

The Board has considered whether the Veteran's lumbar spine disability presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of an extraschedular rating is warranted. See 38 C.F.R. § 3.321(b)(1) (2014); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The Veteran's service-connected lumbar spine disability is manifested by symptoms of chronic pain, stiffness, fatigue, decreased motion, spasms, tenderness and unsteadiness, which prevents her from prolonged sitting, standing and walking, impacts her ability lift and carry heavy objects and causes problems with activities involving twisting and bending. These symptoms and their resulting effects are fully contemplated by the rating schedule, which provides disability ratings on the basis of musculoskeletal deformity under Diagnostic Code 5243. For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight-bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. In summary, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss. 

Determining entitlement to an extraschedular rating under 38 C.F.R. § 3.321(b) involves three steps. Thun v. Peake, 22 Vet. App. 111, 115 (2008). First, there must be a finding that the evidence of record presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular criteria are found to be inadequate to evaluate the disability, the Board must determine whether the disability exhibits other related factors such as marked interference with employment or frequent periods of hospitalization. If so, then the third step requires the case to be referred to the Under Secretary for Benefits or the Director of Compensation and Pension Services to determine whether the disability requires the assignment of an extraschedular rating. Id. 

The Veteran's service-connected foot disability is manifested by a variety of symptoms. However, these symptoms and their resulting effects are fully contemplated by the rating schedule, which provides disability ratings on the basis of musculoskeletal deformity under Diagnostic Code 5243. For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight-bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. In summary, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss. 

Therefore, the Board finds that referral for extraschedular consideration is not warranted in this case. The Veteran's reported symptoms - and more importantly their consequent effect - are contemplated by the schedular rating criteria. His symptoms related to his foot injury are rated based on the extent of their severity, whether moderate, moderately severe, or severe. All of his symptoms are considered when determining their severity; and, therefore all of his symptoms are also contemplated by the Rating Schedule.

Under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected symptoms that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

In Rice v. Shinseki, the Court held that a request for a total rating based on unemployability due to service-connected disability (TDIU), either expressly raised by the Veteran or reasonably raised by the record, is part of the claim for an increased rating. Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). In this case, the Veteran has not asserted that he is unable to obtain or maintain substantially gainful employment because of his foot. Accordingly, the Board concludes that a request for TDIU has not been expressly or reasonably raised by the record.


ORDER

A 30 percent rating is granted for the residuals of a fracture of the cuboid bone of the right foot.


REMAND

The Board's January 2014 remand directed that a VA examination and opinion be obtained in regard to whether the Veteran's bilateral hip disability is related to service. The opinion that was received is inadequate for adjudication. The VA examiner indicated that there was a 40-year difference between the Veteran's foot injury in August 1970 and his hip diagnoses, making it less likely that there was a relationship. She did not address the Veteran's allegations of continuous pain since the incident, nor the medical evidence showing complaints as early as 1995. Another opinion should be obtained.

Further, the record suggests there may be outstanding records. At the April 1995 and December 2012 VA examinations, and in a July 2009 statement, the Veteran reported being hospitalized and also undergoing convalescence for several months, possibly as an in-patient, following the August 1970 accident. In-patient treatment and records of hospitalization are not stored with the service treatment records (STRs), and efforts should be made to locate them. It also appears that the Veteran may have had additional VA treatment on his right foot and ankle in the 1990's. These records may be relevant to his bilateral hip claim.

Accordingly, the case is REMANDED for the following action:

1. Ensure that the Veteran's complete record of VA treatment, including all records from the 1990's, have been associated with the claims file. Ensure that all searches for older records include searches of paper archives.

2. Attempt to locate any records of in-patient hospital treatment and convalescence from the Veteran's period of active duty. He alleges being hospitalized in Long Binh for a period of time, followed by a months-long convalescence. See April 1995 and December 2012 VA examinations, and July 2009 statement of the Veteran.

3. After receipt of any additional records, forward the Veteran's claim file to an orthopedist for an opinion on whether it is as likely as not (50 percent or greater probability) that his bilateral hip disabilities (which have been diagnosed as mild degenerative joint disease and decreased range of motion of the right hip with radiographic evidence of minimal sclerosis of the right mid sacroiliac joint; and, essentially normal left hip with radiographic evidence of minimal sclerosis superior left sacroiliac joint suggestive of mild sacroiliitis) are related to an incident or injury in service, or are caused or aggravated (that is, caused a permanent increase in severity that is beyond the normal progression of the disease) by his service-connected right foot and right ankle disabilities.

The examiner is asked to review the claims file in its entirety and to support all rendered opinions with citation to evidence in the record and to accepted medical knowledge. Whether to schedule a complete examination is left to the discretion of the examiner. 

Although required to review the file before opining, the following information is highlighted for the examiner's benefit:

The Veteran was involved in an accident in August 1970, during which his right cuboid bone was broken. He alleges that during the incident, his body was twisted or "spun around" causing damage to his hips. STRs show the Veteran complaining of right ankle pain and walking with a limp in December 1970. His right foot was still painful in April 1971. His May 1971 separation examination found the Veteran to have normal lower extremities and normal feet, and he did not complain of any problems related to his hips or the August 1970 incident at separation, which, in and of itself, is not dispositive of this claim.

The Veteran reports having a history of substance abuse following service through the 1980's, which is a period of time when he did not seek medical treatment for his painful hips. He reports that when he became sober in the early1990's, he first began seeking treatment. A November 1991 VA treatment record noted he had a limp, and reported soreness of his leg. An April 1995 VA examination for his right foot noted complaints of right hip pain after prolonged standing and walking, and that his right hip began to be more painful after starting to wear inserts in his shoes in or about 1993. His heel to toe walk was normal, but he had a limp when walking on his toes. A February 2001 VA treatment record shows complaints that right hip pain had increased in the preceding months, and his doctor noted that he had been struck by a truck during military service. He saw a chiropractor in December 2001 for pain. In June 2008, he complained of pain in his hips, but X-rays were normal. He was diagnosed with mild degenerative joint disease and decreased range of motion of the right hip with radiographic evidence of minimal sclerosis of the right mid sacroiliac joint; and, essentially normal left hip with radiographic evidence of minimal sclerosis superior left sacroiliac joint suggestive of mild sacroiliitis at the March 2014 VA examination.

The Veteran alleges that his hips were injured during the August 1970 accident, causing his current troubles, and that he has had pain since the incident. He also alleges that he was provided shoe inserts to treat his foot pain in the 1990's, which exacerbated his hip pain because he was not wearing them properly. He alleges that he carries his weight unevenly, contributing to his hip problems, which is due to his right foot and ankle pain. 

To reiterate, the examiner is asked to review the claims file and to opinions of whether there is a 50 percent probability or greater that either hip disability was caused by the incident in service wherein his right cuboid bone was also broken; whether there is a 50 percent probability or greater that either hip disability was caused by his service-connected right foot and ankle disabilities; and, whether there is a 50 percent probability or greater that either hip disability underwent a permanent increase in severity beyond the normal progression of the disease or condition because of the Veteran's service-connected right foot and ankle disabilities. 

4. Following completion of the above directive, review the claims file to ensure compliance with this remand. If the examination report does not include adequate responses to the specific opinions requested, it must be returned to the examiner for corrective action.

5. Finally, after completing all of the above, and any additional development deemed warranted, readjudicate the claim on appeal. If the benefit on appeal remains denied, furnish the Veteran and his representative with a copy of a supplemental statement of the case (SSOC) and allow an appropriate time for response. Thereafter, return the file to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).


This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs